## Richmond

WILLIAM A. FISHER

V.

COMMONWEALTH OF VIRGINIA

Record No. 831693.

October 12, 1984.

Present: All the Justices.

*John C. Shea (C. Hardaway Marks; Marks, Stokes & Harrison,* on brief), for appellant.

*John R. Butcher, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

RUSSELL, J., delivered the opinion of the Court.

The sole question presented by this appeal from convictions of sodomy and attempted rape is whether they are sufficiently supported by the testimony of the victim, a ten-year-old girl. We find the evidence sufficient and affirm the convictions.

William A. Fisher was indicted for the sodomy and rape of the child. After a bench trial, he was convicted of sodomy and attempted rape and was sentenced to a total of thirty years' confinement. The victim's testimony was the sole evidence of the defendant's alleged acts, and it was corroborated only by her prompt report of them to other members of her family. The defendant presented no evidence.

The defendant was the boyfriend of the victim's mother, with whom he had lived for more than three years. Also residing in the mother's home were her children, a boy, age 12, the victim, and her younger sister, age 7. The defendant, age 41, was unemployed and often stayed home with the children while the mother was at work.

The victim testified that on November 24, 1982, while her mother was at work, the defendant came upstairs and led her into her mother's bedroom. He closed the doors into the other children's rooms and locked the door to the mother's bedroom. She said that he told her to remove her clothing and that she complied while he removed his own. He then, she testified, kissed her "lower private part" and inserted his tongue and finger into her body. He was interrupted by the ring of the telephone. When he went to answer it, the youngest child came to the door. He told her "that we were making up the bed." He then, the victim said, put vaseline on her "private part," and "he started doing what people do when they have a baby." She said that he stopped when she told him "it hurt," and that she did not think that he had accomplished penetration "[b]ecause it wouldn't go in." The defendant told her not to tell anybody.

Later that day the victim told her brother that "Buddy [the defendant] does to me what people do when they have a baby." Her brother was the first person she saw outside the defendant's presence. He refused to believe her at first. That evening, the children's maternal grandmother took the victim and her sister to dinner. She testified that the victim said, "Granny, I want to tell you something but it is hard to tell you . . . . [I]t is about having babies." The child told her that the defendant had been "doing things" to her for over a year, but that he made her promise not to tell, and she said nothing about it because she "didn't want to hurt mama." The grandmother "was horrified," and told the mother as soon as she came home. The mother confronted the defendant and ordered him to leave the house. The defendant denied the accusation and insisted that the child be taken to a physician for examination.

Cross-examination of the victim revealed that she harbored some animus against the defendant because he had recently sold a dog to which she was attached. She said that she had "told stories" on the defendant to get him in trouble, including telling her grandmother on one occasion that the defendant had raped an-

other girl. At trial, the girl conceded that the latter "story" was untrue, but maintained that all of the other "stories" she had told were true. Her brother, on cross-examination, confirmed the fact that she had told "stories" on the defendant and that she was angry at him for selling the dog. The brother said, however, "[s]he was basically telling the truth but she exaggerated a little."

On the evening of the day of the offense, the mother took the victim to the emergency room at the John Randolph Hospital, where she was examined by Dr. Peter Ault. Called as a witness for the Commonwealth, Dr. Ault testified that the child's genitalia were normal, showing no lacerations, contusions, abrasions, or other evidence of trauma. The hymen was intact and no foreign substances, secretions, or hairs were recovered.* The hymen, he said, was less than a centimeter inside the body, and in a child of this age, is a "delicate structure . . . very delicate."

Our standard of review is fixed by Code § 8.01-680, which provides that a judgment resulting from a bench trial, in a criminal as well as in a civil case, may not be set aside on the ground that it is contrary to the evidence unless it appears, upon our review, that it is plainly wrong or without evidence to support it.

A rape conviction may be sustained solely upon the testimony of the victim. There is no requirement of corroboration. *Snyder* v. *Commonwealth*, 220 Va. 792, 796, 263 S.E.2d 55, 57 (1980); *Poindexter* v. *Commonwealth*, 213 Va. 212, 217, 191 S.E.2d 200, 204 (1972). *A fortiori*, the same rule applies to the lesser offense of attempted rape. Persuasive authority also extends it to prosecutions for sodomy and other sexual offenses. *State* v. *Beck*, 286 S.E.2d 234, 243 (W. Va. 1981). The reason for the rule is the typically clandestine nature of the crime. There are seldom any witnesses to such an offense except the perpetrator and the victim. A requirement of corroboration would cause most sex offenses to go unpunished. *Robinson* v. *Commonwealth*, 197 Va. 754, 759, 91 S.E.2d 396, 399 (1956). Thus, it is clear that the victim's testimony, if credible and accepted by the finder of fact, is sufficient evidence, standing alone, to support the conviction.

The defendant argues, however, that the child's testimony is inherently incredible, or so contrary to human experience as to render it unworthy of belief. *See Willis & Bell* v. *Commonwealth*,

* The absence of foreign substances may have had little significance because the grandmother gave the child a bath after returning home from dinner.

218 Va. 560, 563, 238 S.E.2d 811, 812-13 (1977). It is true that her credibility was subjected to substantial attack and that the physical evidence failed to establish penetration. *Cf. Scoggin* v. *Commonwealth*, 158 Va. 888, 895, 163 S.E. 83, 85 (1932). That is not to say, however, that her testimony was entirely uncorroborated. The victim made prompt complaint of the defendant's attack to her brother, and later to her grandmother, both on the day of the offense. The complaint to her brother was made at her first opportunity to speak to another person outside the defendant's presence. Evidence of an out-of-court complaint by an alleged rape victim is admissible, not as independent evidence of the offense, but as corroboration of the victim's testimony. *Cartera* v. *Commonwealth*, 219 Va. 516, 518, 248 S.E.2d 784, 786 (1978).

The issue presented to the trial court was simply that of credibility. The court had full opportunity to observe and evaluate the witnesses and to weigh their testimony. A careful foundation was laid for the victim's testimony. The trial court expressed its conclusion that she was cognizant of her oath, aware of her duty to tell the truth, and competent to testify. The trial court had the opportunity, which we lack, to observe and weigh her biases, her intelligence, her demeanor, and her ability to recall and communicate facts accurately. The trial court believed her testimony and found that the evidence constituted proof of guilt beyond a reasonable doubt. The evidence was neither incredible nor so contrary to human experience as to render it unworthy of belief. We will not, therefore, disturb the trial court's findings on appeal.

For the foregoing reasons, the convictions will be

*Affirmed.*