Tuesday        24th

        February, 1998.


Stephen Lane Hebden,                                    Appellant,

  against      Record No. 0482-96-1
               Circuit Court Nos. 31715-95 and 31716-95

Commonwealth of Virginia,                              Appellee.


                    Upon a Rehearing En Banc

            Before Chief Judge Fitzpatrick, Judges Baker, Benton,
    Coleman, Willis, Elder, Bray, Annunziata, Overton and Bumgardner


            Timothy H. Hankins for appellant.

            Kathleen B. Martin, Assistant Attorney
            General (Richard Cullen, Attorney General,
            on brief), for appellee.


        This cause was reviewed on rehearing en banc, and upon

consideration of the argument of counsel and the entire record in this

case, the judgments of the trial court rendered on February 23, 1996

are affirmed without opinion by an equally divided court.  Judges

Baker, Benton, Bray, Overton and Bumgardner voted to reverse the

judgments of the trial court.  Chief Judge Fitzpatrick and Judges

Coleman, Willis, Elder and Annunziata voted to affirm said judgments.

 Accordingly, the opinion previously rendered by a panel of this Court

on August 26, 1997 is withdrawn and the mandate entered that date is

vacated.  See Hebden v. Commonwealth, 25 Va. App. 448, 489 S.E.2d 245

(1997).  The appellant shall pay to the Commonwealth of Virginia

thirty dollars damages.

This order shall be published and certified to the trial court.

A Copy,

Teste:

Clerk

                                        Tuesday        14th
          October, 1997.


Stephen Laine Hebden,                              Appellant,

 against     Record No. 0482-96-1
             Circuit Court Nos. 31715-95 and 31716-95

Commonwealth of Virginia,                          Appellee.


              Upon a Petition for Rehearing En Banc
                    Before the Full Court


        On September 9, 1997 came the appellee, by counsel, and
filed a petition praying that the Court set aside the judgment
rendered herein on August 26, 1997, and grant a rehearing en banc
thereof.

        On consideration whereof, the petition for rehearing en banc
is granted, the mandate entered herein on August 26, 1997 is stayed
pending the decision of the Court en banc, and the appeal is
reinstated on the docket of this Court.

        The parties shall file briefs in compliance with Rule 5A:35.
 It is further ordered that the appellee shall file with the clerk of
this Court ten additional copies of the appendix previously filed in
this case.

                        A Copy,

                           Teste:

                                    Cynthia L. McCoy, Clerk

                        By:

                        Deputy Clerk

COURT OF APPEALS OF VIRGINIA


Present: Judges Baker, Annunziata and Overton
Argued at Norfolk, Virginia


STEPHEN LAINE HEBDEN
                                              OPINION BY
v.        Record No. 0482-96-1         JUDGE NELSON T. OVERTON
                                             AUGUST 26, 1997
COMMONWEALTH OF VIRGINIA

          FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                      Verbena M. Askew, Judge

          Timothy H. Hankins for appellant.

          Kathleen B. Martin, Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     Stephen Laine Hebden was convicted in a bench trial of

object sexual penetration and carnal knowledge of a child under

the age of fifteen and was sentenced to thirty years confinement

in the state penitentiary.  He appeals, contending that the

evidence is insufficient to support his convictions.

     While a prosecutrix's uncorroborated testimony may suffice

to support a conviction of a sexual offense, see Fisher v.

Commonwealth, 228 Va. 296, 299, 321 S.E.2d 202, 203-04 (1984),

such a conviction "cannot stand where that testimony is contrary

to human experience." Schrum v. Commonwealth, 219 Va. 204, 207,

246 S.E.2d 893, 896 (1978).  In the instant case we are compelled

to apply this exception because the prosecutrix's uncorroborated

account of events, when taken as a whole and considered with all the other evidence presented, is incredible as a matter of law. For this reason, we reverse and dismiss.

Our conclusion is based upon a number of factors that combine to undermine the credibility of the prosecutrix's accusations.  First, the evidence at trial demonstrated that the prosecutrix had a motive to fabricate the accusations against the appellant.  The prosecutrix, thirteen years of age, had lived with her mother, who was separated from her father, the appellant.  Due to problems she was having in her mother's custody -- truancy, poor grades, juvenile authorities -- custody was transferred to her father.  The appellant was much more strict with the prosecutrix than her mother had been, and imposed several restrictions.  A friend of the prosecutrix testified that she had told him that the appellant would not let her see her boyfriend and that she "was going to get even with him."  The prosecutrix denied making this statement.  Other evidence corroborated the prosecutrix's desire to leave the appellant's home and to resume living with her mother where she could see her boyfriend and where restraints on her social life were much less severe.  With evidence before the trial court of the prosecutrix's statement that she was going to get even with her father, the trial judge stated that "the Court is still stuck with why [the prosecutrix] would come in court and subject herself to this as well as to subject her father to this type of

-5-

prosecution . . . ."

Secondly, the accusations were made at a time convenient for the prosecutrix, as she recently had been subjected to further restrictions on her social life.  She alleged that the appellant abused her in the early morning of May 25, 1995.  Later that day, she visited the home of a friend who lived near her father's house and spent the night there.  The next day, she went to her mother's residence in Portsmouth for the Memorial Day weekend.  During that visit she was caught sneaking out of her mother's house at night.  At the mother's telephoned request, appellant came to get the prosecutrix around midnight Sunday and took her back to his house in Newport News.  He told the prosecutrix that he was placing restrictions on her social life for the entire summer.  Two days later, she made her accusations to the school authorities, including the alleged incident of May 25, 1995 and one alleged to have occurred several months before, in January.

Thirdly, although the narrative of the incidents themselves did not contain many inconsistencies, some were present.  The prosecutrix alternately referred to the January incidents as occurring regularly ("Sometimes he'd come back, and other times he would leave") and as a single incident ("that night").  She was unable to give a date or dates for the acts alleged to have occurred in January.  She did not remember at the preliminary hearing what time of night the incident occurred, but at the trial five months later she remembered the time from looking at

her digital alarm clock.  These discrepancies do not by themselves render the prosecutrix's story incredible.  Coupled with her mother's testimony that the prosecutrix lies and may lie to "get her way," however, a strong shadow is cast upon the prosecutrix's credibility.  The prosecutrix also denied her statement about her boyfriend and about "getting even" with the appellant, a statement made to an unbiased third party.  She never told her mother, or, as far as can be determined from the record, any other friend or family member about the appellant's alleged abuse.  The prosecutrix had been involved with the juvenile authorities before moving to live with the appellant, and, after his arrest and her subsequent return to her mother, her mother filed charges against her for the unauthorized use of the mother's car.  While corroboration of the prosecutrix's testimony is not required in this kind of case, it must be noted that no other evidence supported her accusations.

Fourthly, the appellant testified on his own behalf and denied all of the accusations.  Two other witnesses testified that he had a good reputation for honesty in the community.

Finally, the prosecutrix's stepmother testified that she and the appellant slept together on a waterbed in a room next to the bedroom of the prosecutrix and that the doors to both rooms were always open.  She stated that she knew her husband did not get up and go to the other room as alleged because she would have been awakened when he got out of the waterbed, and that this did not

happen.

A careful review of the entire trial transcript reveals each of these individual facts, which, when taken together, form a more complete record of events than any one witness' account. As the Supreme Court stated in <u>Young v. Commonwealth</u>, 185 Va. 1032, 1042, 40 S.E.2d 805, 810 (1947):

> If it was a choice between her veracity and his, we would not find fault with the [fact finder] for accepting her statement. . . . If there is not sufficient evidence to establish beyond a reasonable doubt that he is guilty of the offense of which he has been convicted, then the verdict is plainly wrong and it is our duty to set it aside. This we are compelled to do because there is too much that is contrary to human experience in her version of the matter when analyzed in the light of the facts and circumstances shown to exist, to say that the guilt of the defendant has been proved as the law requires.

We reach the same conclusion here. In this case, on this specific set of facts and upon consideration of all the evidence, we find that the prosecutrix's completely uncorroborated testimony is insufficient to prove beyond a reasonable doubt that the appellant committed the alleged offenses.

<u>Reversed and dismissed.</u>

Annunziata, J., dissenting.

This case turns on the credibility of the prosecutrix. The trial court, which had the opportunity we lack to observe the prosecutrix testify, "to weigh her biases, her intelligence, her demeanor, and her ability to recall and communicate facts accurately," believed the prosecutrix and found that the evidence constituted proof of appellant's guilt beyond a reasonable doubt. See Fisher v. Commonwealth, 228 Va. 296, 300, 321 S.E.2d 202, 204 (1984). The majority concludes that the evidence was insufficient to support the trial court's finding of guilt because the prosecutrix's testimony is contrary to human experience and inherently incredible as a matter of law. I respectfully disagree.

The standard of review when the sufficiency of the evidence is challenged on appeal is well settled. We construe the evidence "in the light most favorable to the Commonwealth," grant the Commonwealth "all reasonable inferences fairly deducible therefrom," and "discard the evidence of the accused in conflict with that of the Commonwealth." Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988) (citations omitted); see also Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). Unless the trial court's judgment appears to be plainly wrong or without evidence to support it, it cannot be set aside. Code § 8.01-680; Josephs v. Commonwealth, 10 Va. App. 87, 99, 390 S.E.2d 491, 497 (1990) (en banc).

Furthermore, "[i]t is fundamental that `the credibility of witnesses and the weight accorded their testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the witnesses.'" Collins v. Commonwealth, 13 Va. App. 177, 179, 409 S.E.2d 175, 176 (1991) (quoting Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985)). The trial judge's determination of the facts, based on the trial judge's evaluation of the credibility of the witnesses, is entitled to great weight. E.g., Satterwhite v. Commonwealth, 201 Va. 478, 483, 111 S.E.2d 820, 823-24 (1960).

The thirteen-year-old victim in this case was the child of divorced parents. She resided with each parent at different times. At the time of the offenses, she lived with her father, the appellant, and her stepmother, with whom she did not have a close relationship. Appellant referred to his daughter as "his best girlfriend."

The child's bedroom in appellant's home was located adjacent to that of appellant and his wife. The child testified that during the month of January 1995, appellant entered her room after she had fallen asleep, knelt at the side of her bed, put his hands under her blankets and felt her breasts and vagina under her nightshirt. She further testified that appellant inserted his fingers inside her vagina. She testified that she pushed appellant away, and he would "sometimes . . . come back, and other times . . . would leave but [come] back." She also

-10-

testified that on May 25, 1995, appellant entered her bedroom where she was lying in bed on her side, knelt on the floor next to her bed, rolled her onto her back and touched her breast and vagina as he had done before. On this date, however, she stated that her father also used his tongue to lick her vagina after pulling her underpants to her knees.

Until the May incident, the child did not report the sexual assaults, and she acknowledged that, although her stepmother was asleep in the next room, she did not cry out for help. On May 31, she reported the incident to her school counselor.

The evidence showed that, between May 25 and 31, while visiting her mother, the child remained out past her curfew and her father had to be called to retrieve her. The evidence showed that appellant was a strong disciplinarian who had imposed strict rules governing the child's behavior and academic performance with which the child was generally compliant. As a result of the weekend incident, appellant threatened to ground the child for the entire summer.

The appellant denied the child's accusations. He contended the child had fabricated her story in response to his threat to prohibit her social activities for the summer and because she wanted to return to live with her mother, who was less strict and who lived in closer proximity to the child's boyfriend. A friend of appellant, who also considered himself a friend of the child, testified that the child had told him in March 1995,

approximately two months before the May restrictions were imposed, that she would get even with her father for not allowing her to see her boyfriend.

The child explained her delay in reporting the earlier molestations. She stated that she was afraid and that she did not want to lose her relationship with her father or have him go to jail. She ultimately reported the occurrences "[b]cause it happened so many times, [she] . . . was tired of it." The child specifically denied having threatened to get even with her father.

If believed, the child's testimony, even uncorroborated, is sufficient to support the finding of guilt beyond a reasonable doubt. See Fisher, 228 Va. at 299, 321 S.E.2d at 203; Willis & Bell v. Commonwealth, 218 Va. 560, 563, 238 S.E.2d 811, 812 (1977).[1] The child's testimony was believed by the trier of fact, which declined to credit appellant's contention the story was fabricated. At the close of the evidence, the court made the following finding:

> The Court looked very closely at the demeanor
> of all the witnesses, but more particularly
> the Court looked at the demeanor of
> [appellant] and also with [the child], and
> . . . the Court is still struck with why [the
> child] would come in court and subject

---

[1] I note, however, that the child's testimony was not wholly uncorroborated. Rather, the child reported the offenses to her school counselor. "Evidence of an out-of-court complaint . . . is admissible, not as independent evidence of the offense, but as corroboration of the victim's testimony." Fisher, 228 Va. at 300, 321 S.E.2d at 204 (citing Cartera v. Commonwealth, 219 Va. 516, 518, 248 S.E.2d 784, 786 (1978)).

herself to this as well as to subject her father to this type of prosecution, and the Court was most convinced really by [the child's] explanation as to why she didn't tell anybody was because she was afraid for her father, frankly, and she's indicated that she didn't want what was happening to happen. She didn't want to see him go to jail, and she didn't want anything to happen to him, and the Court basically has to make a judgment call as to which one of these witnesses is telling the truth about what happened, and as a result the Court believes [the child].

Because witness credibility was the essential issue surrounding the child's alleged motivation to fabricate the accusations, and the trial court resolved the conflicts in the evidence against the appellant, the only basis upon which the conviction can be reversed is to find the child's testimony "inherently incredible, or so contrary to human experience or to usual human behavior as to render it unworthy of belief." Willis & Bell, 218 Va. at 563, 238 S.E.2d at 813. I do not believe the standard was met in this case.

That the incidents escaped detection by the child's stepmother, apparently asleep in an adjoining room during the early morning occurrences, is neither surprising nor inherently unworthy of belief. The crime at issue is one that can be perpetrated clandestinely, considerably more clandestinely than the crime of rape. It is not a crime that leaves observable, tell-tale physical evidence or necessarily provokes outcries of pain. Further, it is easy to understand a child's natural reluctance to call out to her stepmother for help in repelling

her father's sexual assault.

With respect to the delay in reporting the incident, a reasonable explanation was given: this child of divorced parents did not wish to see her father go to jail or otherwise get in trouble. Her decision to protect her father, the perpetrator, is not contrary to human experience, and delayed reporting is not uncommon. See, e.g., Corvin v. Commonwealth, 13 Va. App. 296, 299, 411 S.E.2d 235, 237 (1991).

Finally, the timing of the child's report, following the father's threat to prohibit the teenage child's social life for an entire summer, also followed an escalation in the nature of the sexually assaultive conduct. The impact of the last assault, which involved an act of cunnilingus on the thirteen year old, must be evaluated together with her father's threat to restrict her social contacts. But the evaluation of the evidence on the issue of motivation requires the trier of fact to weigh the evidence, a matter beyond the purview of an appellate court and peculiarly within the province of the trier of fact. See, e.g., Fisher, 228 Va. at 300, 321 S.E.2d at 204. While the father's threat may arguably have provoked fabrication in retaliation, the trial court resolved the issue in favor of the other reasonable inference to be drawn from the evidence, viz., the child found the continuing and escalating nature of the sexual assaults totally unacceptable and when balanced against the need to protect her father, she chose to protect herself. Finally, even

if we assume the child was angered by the appellant's threat to limit her social contacts, the trial court's implicit conclusion that the anger provoked the timing of the report, not its content, was reasonable and reflective of common human experience.

In sum, the testimony of the prosecutrix, if believed, was sufficient to support appellant's conviction. The trial court, which had the full opportunity to observe and evaluate the witnesses, believed the prosecutrix. "`The living record contains many guideposts to the truth which are not in the printed record; not having seen them ourselves, we should give great weight to the conclusions of those who have seen and heard them.'" Ketchum v. Commonwealth, 12 Va. App. 258, 263, 403 S.E.2d 382, 384 (1991) (quoting Bradley v. Commonwealth, 196 Va. 1126, 1136, 86 S.E.2d 828, 834 (1955)). I find that the record does not support the majority's conclusion that the prosecutrix's testimony was inherently incredible or contrary to human experience.

I would affirm the convictions.