COURT OF APPEALS OF VIRGINIA


Present: Judges Coleman, Frank and Senior Judge Hodges


PIERRE AUGUSTE RENOIR

MEMORANDUM OPINION[*] BY
v.    Record No. 2097-98-3      JUDGE ROBERT P. FRANK
MARCH 28, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
Clifford R. Weckstein, Judge

(C. Gregory Phillips; Phillips & Swanson, on
brief), for appellant. Appellant submitting
on brief.

(Mark L. Earley, Attorney General; Richard B.
Smith, Assistant Attorney General, on brief),
for appellee. Appellee submitting on brief.


Pierre Auguste Renoir (appellant) appeals his convictions of

anal sodomy (2 counts), rape, aggravated sexual battery (2

counts), indecent liberties (2 counts), sodomy by fellatio (2

counts), object penetration (2 counts), and sodomy by cunnilingus.

On appeal, appellant argues that the evidence was insufficient to

convict him and, more particularly, that the Commonwealth failed

to prove penetration. We agree in part and disagree in part.

I.   BACKGROUND

The victim was born in 1987 and is the daughter of appellant

and his former wife, Holly Hicks. From 1990 until 1992, the

───────────────

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

victim, her brother, Hicks, and appellant lived in a series of apartments in Roanoke.  Hicks worked at a full-time job, and appellant stayed at home to care for the children.

Appellant and Hicks divorced in 1992.  For a period of time, appellant and Hicks resided in adjoining apartments to facilitate care of the children.  The victim and her brother lived primarily in appellant's apartment.  In January of 1993, Hicks, appellant, the victim, the victim's brother, appellant's new wife, Renee Gamble, and Gamble's two children all moved to a house in Roanoke, which the victim called "the star house" due to its proximity to a Roanoke landmark.

For part of 1995, appellant, the victim, and the victim's brother lived with Hicks in a house outside Roanoke.  Appellant then met and moved in with Jo Ellen Famularo.  The victim and her brother lived with appellant and Famularo in Famularo's Roanoke County apartment.  In 1996, appellant and Famularo moved to Colorado and took the victim and her brother with them.  Appellant and Famularo placed some of their belongings at a storage facility in Cheyenne, Wyoming.  Appellant and Famularo parted ways in June of 1996, and Famularo returned to Virginia.

During the summer of 1996, Hicks brought her children back to Virginia from Colorado.  Thereafter, the victim began having nightmares and was afraid at night.  After a bad dream one night, the victim told her mother that appellant had done "bad things" to her and described the conduct appellant had engaged in during the

-

preceding years.  Hicks confronted appellant during a telephone conversation a few days later.  Appellant denied the accusations, but said he would stay away from the children if Hicks agreed not to take any action on the matter.  He said he would agree in writing never to have contact with her or the children again and offered to relinquish custody of the children.

The victim was eleven years old at the time of appellant's trial.  She identified the place where she would urinate as her "pee-pee," her vagina as the place "where babies come out," and her anus as her "butt."  She drew a picture of a "man's pee-pee," which she described as "where pee comes out of."

### CUNNILINGUS

The victim testified that her first memory of her father "hurting" her was when she awoke during the night when she was four or five years old to find appellant "licking her pee-pee." The victim then went back to sleep.  This incident occurred when appellant and Hicks lived in adjoining apartments.

### AGGRAVATED SEXUAL BATTERY AND INDECENT LIBERTIES

Subsequently, more than once while living at the "star house," appellant rubbed his "pee-pee" on the victim's "pee-pee."

The victim further stated that appellant touched her with his hands on her "pee-pee," her breasts, and her "butt."  While appellant was holding the victim's breasts, he kissed her "like you would kiss someone that you love," placing his tongue in her mouth.

-

Appellant took nude photographs of the victim posing with Gamble's daughter. The victim testified that appellant showed her "sex videos" to show her how to "move and stuff." One of the videos depicted people that she knew.

Victim further testified that appellant touched her on her "pee-pee" with his tongue.

## RAPE

The victim stated that, on more than one occasion while she was in bed at the "star house," appellant told her to undress and she complied. Appellant got on top of her and "sticked" his "pee-pee" where babies come out and it really hurt. At these times, appellant's "privates" were inside the victim's "privates." Appellant was holding the victim's "boobs," kissing her, and saying, "Oh, baby, oh baby." During one such incident, appellant put a "covering" on his "pee-pee" before he put it inside "where babies come out."

## ANAL SODOMY

The victim further testified that appellant stuck his "pee-pee" in her butt. The victim testified she was hurting and he was feeling great, rubbing her butt faster and faster. It is not clear from the record whether anal sodomy occurred once or several times.

## OBJECT PENETRATION

The victim stated that appellant had devices he used on her body on more than one occasion in the "star house." She drew

-

illustrations of three different devices, which were plastic and battery operated. The victim said the device would shake when appellant turned it on. Appellant put all three devices "on" her "pee-pee," "where babies come out," and in her "butt." Referring to a drawing the victim said was consistent with female genitalia, she stated that appellant used the device to touch the "little lips" inside the labia majora.

When the Commonwealth's attorney asked the victim during direct examination whether appellant "put it on your butt, did it go inside or was it merely laying on top," the victim responded, "merely laying on top." The Commonwealth's attorney then asked the victim, "When it was where babies go, did it go inside or not?" The victim responded, "No, ma'am." The victim indicated she was familiar with her reproductive anatomy, knowing the inner and outer lips of the vagina. After being shown a diagram of the vagina, the victim said the device touched half the inside (the labia majora). On cross-examination, when asked was the device just on top, the victim responded, "No, it was kind of inside me and kind of outside."

## FELLATIO

On several occasions, appellant told the victim to lick his "pee-pee." He would tell her to open her mouth and he would have the victim stick his "pee-pee" in her mouth and have her "suck it." The victim said, "When the stuff runs in my mouth it tastes terrible." Appellant told the victim to swallow the "stuff." The

-

victim testified that after appellant would leave, she would "say yuk."  The victim further said that this same event happened more than once.

The victim said she did not tell anyone about what appellant was doing to her because appellant threatened to "go away," and she was afraid she would never see him again.

When Famularo visited the storage facility to retrieve her property before she returned to Virginia, she found two canisters of undeveloped film.  The film contained nude posed pictures of the victim and Gamble's daughter.  Famularo also found four dildos in a box of appellant's clothing.  The victim identified three of the dildos as the devices appellant had used to touch her.

Hicks testified that appellant showed her a video he made of himself and Gamble having "intimate relationships."  Hicks testified that during her marriage to appellant he made many threats on her life, even to the extent of placing a gun to her head.

Dr. Donald Keys examined the victim in December of 1996.  The victim's hymen was asymmetric, with a notch on one side.  There was a "very scarred, healed appearance" to the hymen.  The hymen is inside the labia majora.  The victim's rectal exam did not reveal any scarring.  However, the victim's rectum dilated upon a touch, which was unusual in the absence of an immediate need to defecate.  Keys testified that the victim's condition was "consistent with penetration."

-

## II.  ANALYSIS

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted).

The jury accepted the Commonwealth's evidence, and rejected appellant's argument that the victim's testimony was unworthy of belief.  "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995) (citations omitted).  We do not find that the victim's testimony was "'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'"  Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991) (quoting Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984)).  Moreover, the victim's testimony was corroborated by the medical evidence, as well as the discovery of the dildos and the film among appellant's stored property.  The victim identified the dildos as the devices appellant used on her body.  She also identified the pictures as those taken by appellant of her and Gamble's daughter.

On appeal, appellant contends that the evidence was insufficient to prove the element of penetration for his convictions of rape, two counts of sodomy by fellatio, anal

-

sodomy, object sexual penetration, and sodomy by cunnilingus.[1]  We summarize the victim's testimony.[2]

Rape:  The victim testified that appellant, on more than one occasion, placed his penis inside her vagina and it hurt her.  She said that once he used a "covering" over his penis before he penetrated her.

Two counts of sodomy by fellatio:  The victim testified that, more than once, appellant put his penis into her mouth, and she sucked it until he ejaculated.

Two counts of object penetration:  The victim, knowing her reproductive anatomy and seeing a diagram, testified that the device touched her on the inside of her vagina.  However, when asked about the device in reference to her anus, she testified it was only laying on top of her butt.  The evidence is not sufficient to show penetration of her anus.

---

[1] Appellant offers no argument specifically challenging the sufficiency of the evidence to sustain his convictions for aggravated sexual battery and taking indecent liberties.  Nor does appellant contend that the Commonwealth failed to prove that the offenses occurred within the time frame charged in the indictment.  Accordingly, we do not address these issues.  See Rules 5A:12(c) and 5A:20(e) (requiring the petition for appeal to contain argument pertaining to each issue raised on appeal).

[2] It is clear from appellant's testimony as a whole that she equated appellant's "pee-pee" with his penis, the place on her body "where babies come out" with her vagina, her "butt" with her anus, and her "pee-pee" with the opening where urine is emitted.

Cunnilingus:  Victim testified that she was asleep and woke up to appellant licking her "pee-pee."  There was no testimony of penetration.

Anal sodomy:  Appellant stuck his penis in the victim's "butt."  It hurt.

Based on the victim's testimony and the other evidence before the jury, the jury properly found that the Commonwealth had established the elements of penetration for rape, one count of anal sodomy, two counts of fellatio, and one count of object penetration.

We find that the Commonwealth did not prove penetration in the cunnilingus count or in one count of object sexual penetration because there was no evidence of anal penetration in the latter count.

We further find that there was only one incident of anal sodomy.

CONCLUSION

For these reasons, we, therefore, affirm the following convictions:  rape, aggravated sexual battery (two counts), indecent liberties (two counts), object sexual penetration (one count), fellatio (two counts), and anal sodomy (one count).

-

We reverse and dismiss the charge of cunnilingus, one count of anal sodomy, and one count object sexual penetration.

<u>Affirmed, in part and reversed and dismissed, in part.</u>