COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Powell and Senior Judge Coleman
Argued at Richmond, Virginia


KEVIN WAYNE PARKER

MEMORANDUM OPINION[*] BY
v.        Record No. 0787-08-2           JUDGE CLEO E. POWELL
                                         MAY 19, 2009

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Beverly W. Snukals, Judge

Jessica M. Bulos, Assistant Appellate Defender (Office of the
Appellate Defender, on briefs), for appellant.

Alice T. Armstrong, Assistant Attorney General II (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Kevin Wayne Parker ("Parker") appeals his convictions for rape, robbery, statutory

burglary, malicious wounding, and unlawful wounding in the commission of a felony.  On appeal,

Parker contends that the trial court erred in denying his motion to vacate the guilty verdict and

declare a mistrial when the Commonwealth failed to disclose material impeachment evidence prior

to trial.  Additionally, Parker contends that the evidence was insufficient to support his convictions.

Finding no error, we affirm the convictions.

BACKGROUND

At about 10:30 p.m. on the night of November 29, 2006, L.G. was lying in bed when she

heard a key opening the deadbolt lock on her door.  The light in her living room turned on, and

she heard a male voice call out, "Maintenance!"  L.G. sat up in bed and saw an

African-American male, whom she later identified as Parker, standing in her living room.  L.G.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

did not immediately recognize Parker, but she believed that the intruder resembled the man who had fixed her garbage disposal the week prior.[1]

Parker jumped on top of L.G., pushing her back into a lying position. After a brief struggle, L.G. asked Parker what he wanted. Parker replied, "Money. I want money." L.G. stated that she only had $24 in her bank account. Parker then told her that he wanted it.

Parker then stabbed L.G. in her right shoulder. He then let her get up and followed her into the living room so that she could get her purse to give him her debit card. Fearing for her life, L.G. gave Parker her debit card and the corresponding PIN.

Parker then pushed L.G. back into the bedroom. He pushed her onto the bed, laid on top of her, pulled down his pants, and began to force L.G.'s legs open. At the time, L.G. was not wearing any underwear and the only thing she had on was a long nightgown. Parker held his penis in his right hand and penetrated L.G.'s vagina with the head of his penis. Unable to maintain an erection, Parker got up and forced L.G. to masturbate him.

Parker suddenly began frantically searching for a key, becoming more aggressive when he was unable to find it. He retrieved a roll of duct-tape from his pocket and, after several attempts, taped up L.G.'s hands, ankles, eyes, nose, and mouth. Parker eventually left, and once she was sure it was safe, L.G. freed herself and called 911.

L.G. was transported to MCV where she was examined by a Forensic Nurse Examiner. While at the hospital, L.G. spoke with Detective Kristi Schroeder of the Richmond police. L.G. described her attacker as a male in his early thirties who had a full, but short, beard. She also told Detective Schroeder that he was possibly a maintenance man at her apartment complex.

---

[1] It was subsequently confirmed that Parker was the person who had repaired L.G.'s garbage disposal the week prior.

The next morning, November 30, 2006, Parker reported to work. Shortly after arriving, Parker informed Jonnae Wiggins ("Wiggins"), the assistant property manager, and Lori Robertson ("Robertson"), the senior property manager, that he had heard from a tenant that somebody had been raped and stabbed in Apartment 305, L.G.'s apartment. Robertson knew L.G., so she, Wiggins, and Parker went to L.G.'s apartment. When they arrived, Parker opened the door to the apartment with a master key. He then entered the apartment and headed toward the bedroom. Robertson, however, ordered him out of the apartment, as it was a crime scene. Robertson and Wiggins both noticed that Parker had shaved his full beard and that he appeared to be "a little more high strung" than normal.

On December 1, 2006, Detective Schroeder presented a photo lineup to L.G. The photo lineup included a picture of Parker, whom L.G. subsequently identified as her attacker. At Detective Schroeder's request, L.G. noted her level of certainty as between seven and eight on a scale from zero to ten. L.G. later testified that she was more certain than that, but "wanted to allow for the fact that [she] had been bruised and banged up and lost a certain amount of blood."

Following L.G.'s identification of Parker, Detective Schroeder attempted to locate Parker. Detective Schroeder was unable to locate Parker at his home, however, she was able to speak with his wife, Rosalyn Parker ("Rosalyn"), who was unaware of Parker's whereabouts. Parker was eventually located in Philadelphia, Pennsylvania almost three months later.

On December 2, 2007, Rosalyn was arrested for obstruction of justice. At the time of her arrest, both Detective Schroeder and the Commonwealth's attorney prosecuting Parker were present. The Commonwealth's attorney informed Rosalyn that the obstruction of justice charge arose from a taped conversation between Rosalyn and Parker in which Rosalyn stated that she had turned over some of his clothing to the police without informing them that she had washed

them first. After she was informed of the charges against her, Rosalyn was also served with a subpoena to testify at her husband's trial.

On December 6, 2007, Parker appeared before the trial court and waived his right to a jury trial. During the trial, the Commonwealth called Rosalyn to testify. Before Rosalyn testified, defense counsel stated,

> I believe that Mrs. Parker has been charged with a criminal offense . . . that arise[s] out of circumstances surrounding this case, and I would ask that Mrs. Parker be advised of her Fifth Amendment rights not to testify.

The trial court then advised Rosalyn of both her Fifth Amendment rights and her spousal privilege. In response, Rosalyn affirmatively stated that she wished to testify.

Rosalyn testified that she tried to contact Parker at least four times on the evening of November 29, 2006, but to no avail. She further testified that he was not home when she got home from work, between 12:30 and 12:45 a.m. on November 30, 2006. When he arrived home at around 1:15 a.m., he went into the bathroom and shaved off his beard. Rosalyn further testified that Parker was very playful and hyper and "appeared to be on something." She also stated that, shortly after getting into bed, Parker got up and asked her if she had seen a key that he thought he had dropped. Parker then went outside to look for the key before returning to bed.

After Rosalyn testified, the Commonwealth rested its case. Parker moved to strike as to the sufficiency of the evidence on the identification and penetration. The motion was denied. Parker then chose not to put on any evidence, and he was subsequently convicted of rape, robbery, statutory burglary, malicious wounding, and unlawful wounding in the commission of a felony.

Following the trial but prior to sentencing, Parker filed a motion to set aside guilty verdict and declare a mistrial. Parker claimed that his due process rights under the Virginia and United States Constitutions had been violated because the Commonwealth failed to disclose the nature

of and circumstances surrounding the obstruction of justice charge for which Rosalyn was arrested. According to an affidavit filed on December 27, 2007, Rosalyn claimed that she really did not want to waive her spousal privilege, but she did so out of fear.

On January 24, 2008, the trial court held a hearing on Parker's motion for a mistrial. Parker conceded that he was aware of the obstruction of justice charge and could have impeached Rosalyn on that point, but he argued that he was entitled to know "the entirety of the circumstances surrounding the charge." The trial court denied the motion, stating that the Commonwealth's disclosure was timely and that the impeachment evidence would not have changed the outcome, as the evidence against Parker was "overwhelming." Parker appeals.

ANALYSIS

Motion for Mistrial

"The decision whether to grant a mistrial motion is a matter submitted to the circuit court's sound discretion." Lewis v. Commonwealth, 269 Va. 209, 213, 608 S.E.2d 907, 909 (2005). "By definition, when the trial court makes an error of law, an abuse of discretion occurs." Bass v. Commonwealth, 31 Va. App. 373, 382, 523 S.E.2d 534, 539 (2000).

Parker maintains that the Commonwealth was required under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny to disclose the nature and circumstances surrounding Rosalyn's arrest. Specifically, Parker contends that the information regarding the nature and circumstances of Rosalyn's arrest could have been used to impeach her testimony, the Commonwealth was aware of this information and failed to disclose the information to Parker, and that Parker suffered prejudice as a result of the Commonwealth's failure to disclose the information.

It is well settled that there are "three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [Commonwealth], either willfully

- 5 -

or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). "Stated differently, 'the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" Workman v. Commonwealth, 272 Va. 633, 645, 636 S.E.2d 368, 374 (2006) (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)).

If we assume, *arguendo*, that Parker has established that the information regarding the nature and circumstances of Rosalyn's arrest and pending charges was exculpatory in nature and that information was suppressed by the Commonwealth, he still must establish that he suffered prejudice as a result. Deville v. Commonwealth, 47 Va. App. 754, 756, 627 S.E.2d 530, 532 (2006). Our Supreme Court has defined prejudice as a "reasonable probability that the outcome of the proceeding would have been different had the evidence been disclosed to the defense." Muhammad v. Commonwealth, 269 Va. 451, 511, 611 S.E.2d 537, 571 (2005).

Furthermore, this Court has stated that,

> [p]rejudice cannot be shown where . . . the trial judge was the trier of fact and, upon learning of the undisclosed information, rules unequivocally that the impeachment evidence would have had no impact on the factfinding underlying the defendant's conviction. When a trial judge, sitting as both trier of fact and arbiter of law, finds the Brady evidence inconsequential, there can be no logical possibility that its earlier disclosure would have altered the outcome of the case. Under such circumstances, we need not hypothesize how a reasonable jury would likely have reacted to the new information. We know with certitude, from the factfinder himself, that the outcome of the proceeding would not have been different had the evidence been disclosed earlier.

Deville, 47 Va. App. at 757, 627 S.E.2d at 532.

In the present case, the trial judge unequivocally found that Rosalyn's testimony was immaterial. In response to Parker's motion for a mistrial, the trial judge stated:

- 6 -

> To be honest with you, after she took the stand and got off, I kind of said, "So what?" After I heard everything else, I thought it was not very material. I mean, it was corroborative, but it was kind of not necessary. Without the testimony, I certainly would have had enough to convict the defendant.

We have further recognized that the trial court's "factual finding of no prejudice should be set aside if patently unreasonable." Deville, 47 Va. App. at 758, 627 S.E.2d at 532. However, Parker makes no argument regarding the unreasonableness of the trial court's factual finding. Rather, he only contends that, had the nature and circumstances surrounding Rosalyn's arrest been disclosed, she might have invoked her spousal privilege or had she still testified, the impeachment evidence would have cast serious doubt regarding the veracity of her testimony. Again, assuming *arguendo* that Parker is correct, it does not change the fact that the trial court found her testimony to be immaterial. As there is nothing in the record to indicate that the trial court's factual finding is "patently unreasonable," Parker cannot establish that the outcome would have been different had the nature and circumstances surrounding Rosalyn's arrest been disclosed.

Having decided this case "'on the best and narrowest ground available,'" we need not address the issues of whether the information was exculpatory or improperly suppressed by the Commonwealth. Id. (quoting Logan v. Commonwealth, 47 Va. App. 168, 171 n.3, 622 S.E.2d 771, 773 n.3 (2005) (*en banc*)). "The absence of prejudice, by itself, defeats [Parker's] Brady claim and renders all other [Brady] issues analytically superfluous." Id.

### Sufficiency of the Evidence

Parker next contends that the evidence was insufficient to establish beyond a reasonable doubt that he was the perpetrator of the crimes. In support of this contention, Parker points to the fact that, two days after the attack, when L.G. viewed the photo lineup, she was only 70-80%

certain that Parker was the man who attacked her.[2]  Parker argues that this level of identification, while "fairly good," does not rise to the level of beyond a reasonable doubt.  Furthermore, Parker states that the pretrial photo lineup was "impermissibly suggestive," as Parker was the only maintenance man included in the photo lineup, even though L.G.'s apartment complex employed a total of four maintenance men.  Thus, according to Parker, it is not surprising that L.G. picked him out as her attacker.  Finally, Parker argues that the absence of any forensic evidence tying him to the crime further demonstrates that the Commonwealth failed to prove, beyond a reasonable doubt, that he was the man who attacked L.G.

"When examining a challenge to the sufficiency of the evidence, an appellate court must review the evidence in the light most favorable to the prevailing party at trial and consider any reasonable inferences from the facts proved." Viney v. Commonwealth, 269 Va. 296, 299, 609 S.E.2d 26, 28 (2005).  Accordingly, "[t]he judgment of the trial court is presumed to be correct and will be reversed only upon a showing that it is 'plainly wrong or without evidence to support it.'" Id. (quoting Code § 8.01-680).

"A rape conviction may be sustained solely upon the testimony of the victim.  There is no requirement of corroboration." Fisher v. Commonwealth, 228 Va. 296, 299, 321 S.E.2d 202, 203 (1984).  "Thus, it is clear that the victim's testimony, if credible and accepted by the finder of fact, is sufficient evidence, standing alone, to support the conviction." Id. at 299, 321 S.E.2d at 204.  As there is nothing to indicate that L.G.'s testimony is inherently incredible, we next turn to the reliability of her identification.

In determining the reliability of a witness' identification, we look to the factors enunciated in Neil v. Biggers, 409 U.S. 188 (1972), as significant circumstances that may be

---

[2] When L.G. picked Parker out of the photo lineup, she stated that, on a scale from one to ten, with one being absolutely not certain and ten being absolutely certain, she was "between a seven and an eight."  At trial, defense counsel characterized this as a "70 to 80% identification."

considered along with other evidence. Currie v. Commonwealth, 30 Va. App. 58, 73, 515 S.E.2d 335, 343 (1999). Under Biggers, we must consider:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Biggers, 409 U.S. at 199-200.

In the present case, it is undisputed that L.G. had ample opportunity to view her attacker at the time of the crime. The record further demonstrates that L.G. paid attention to her attacker the entire time he was in her apartment. Additionally, the description she gave two days after the attack matched the general description of Parker. Regarding the level of certainty, however, Parker relies heavily upon the fact that L.G. was only 70-80% certain that Parker was the man who attacked her. However, at trial, L.G. testified that she was actually more sure of her pretrial identification than she indicated, but she wanted to give a conservative estimate in light of the physical trauma she had been through. Parker also overlooks the fact that, during the motion to strike, his attorney acknowledged the fact that L.G. was 100% certain that Parker was the man that attacked her.

Furthermore, this is not a case where the victim's testimony was the only evidence available to the trial court. Rather, L.G.'s testimony is strongly corroborated by a wide range of circumstantial evidence. It is undisputed that, in his capacity as a maintenance man, Parker had access to the master keys to the apartments. Furthermore, the day after the crime took place, there is testimony from two co-workers that he was acting strangely. Wiggins testified that Parker had changed his appearance and was acting different from normal. Robertson testified that she accompanied Parker and Wiggins to L.G.'s apartment, and, upon arrival, Parker rushed into the apartment and began heading for the bedroom. Additionally, Detective Schroeder

testified that she recovered clothing from Parker's home that matched the clothing L.G. said her attacker was wearing. Detective Schroeder also recovered a roll of duct tape from Parker's home that forensic analysis revealed was "consistent in overall construction and in physical and chemical properties" with the duct tape used on L.G. Accordingly, we cannot say that the decision of the trial court was plainly wrong or without evidence to support it.

### CONCLUSION

Assuming that Parker could prove that the information regarding the nature and circumstances of Rosalyn's arrest and pending charges was exculpatory in nature and that information was suppressed by the Commonwealth, we find that he cannot prove that he suffered any prejudice as a result. Furthermore, we find that the evidence, when taken altogether, is more than sufficient to establish beyond a reasonable doubt that Parker committed the crimes for which he was convicted. For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.