COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Petty and Alston
Argued at Salem, Virginia


JIMMY FRANKLIN MORAN, JR.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2769-08-3                       JUDGE LARRY G. ELDER
                                                         MAY 11, 2010
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                            Thomas H. Wood, Judge Designate

            W. Andrew Harding (Eldridge, Elledge, Evans & Harding, PLC, on
            brief), for appellant.

            Erin M. Kulpa, Assistant Attorney General (William C. Mims,
            Attorney General, on brief), for appellee.


        Jimmy Franklin Moran, Jr. (appellant) appeals from his bench trial convictions for

forcible sodomy in violation of Code § 18.2-67.1 and attempted aggravated sexual battery in

violation of Code §§ 18.2-67.3(3) and -67.5(B).[1]  On appeal, he contends the testimony of the

complaining witness was inherently incredible and that the evidence was insufficient to support

his convictions.  We disagree and hold the evidence as a whole, which included extensive

corroboration of the complaining witness' testimony, was sufficient to support his convictions.

Thus, we affirm.

                                            I.

        In reviewing the sufficiency of the evidence on appeal, we examine the record in the light

most favorable to the Commonwealth, granting to the evidence all reasonable inferences fairly

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Appellant also was charged with rape, but the trial court acquitted him of that offense.

deducible therefrom.  Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  The judgment of a trial court will be disturbed only if plainly wrong or without evidence to support it.  Id.

"Determining the credibility of witnesses who give conflicting accounts is within the exclusive province of the [trier of fact], [who] has the unique opportunity to observe the demeanor of the witnesses as they testify."  Lea v. Commonwealth, 16 Va. App. 300, 304, 429 S.E.2d 477, 479 (1993).  The fact finder is not required to believe all aspects of a witness' testimony; it may accept some parts as believable and reject other parts as implausible.  Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993).  The fact finder's credibility determinations may be disturbed on appeal only when we find that the witness' testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."  Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984).  In all other cases, we must defer to the conclusions of "the fact finder[,] who has the opportunity of seeing and hearing the witnesses."  Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985).  These same principles apply in cases involving rape, sodomy, and other sexual offenses, which may be sustained solely upon the testimony of the victim, even in the absence of corroborating evidence.  Fisher, 228 Va. at 299, 321 S.E.2d at 203; see Wilson v. Commonwealth, 46 Va. App. 73, 87, 615 S.E.2d 500, 507 (2005); see also Garland v. Commonwealth, 8 Va. App. 189, 191, 379 S.E.2d 146, 147 (1989) ("Because sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished.").

Here, "[t]he trial court . . . specifically found that the daughter [A.M.] was a credible witness. . . .  [It] 'resolved the credibility issue in her favor.'"  Wilson, 46 Va. App. at 88, 615

S.E.2d at 507. Although A.M.'s testimony, standing alone, was sufficient to support appellant's convictions, that testimony was also corroborated by the testimony of A.M.'s half-brother, Aaron; A.M.'s best friend, Savannah; and A.M.'s mother, Teresa Cooper.

Appellant's conviction for forcible sodomy was based on an act he committed sometime between Halloween and Christmas of 2006, when A.M. was fourteen years old. A.M. testified that appellant had been forcing her to have sex with him since she was thirteen and that the acts almost always occurred when her stepmother, Christina Moran, was working the nightshift and appellant had been drinking. At 3:00 or 4:00 a.m. on the night at issue, appellant awakened A.M. and took her to his bedroom, where he forced her, *inter alia*, to perform oral sex on him. A.M. testified that while she was still in appellant's bedroom, her brother Aaron knocked on appellant's bedroom door and asked where A.M. was. A.M. testified appellant told Aaron she was spending the night at a neighbor's house, but when Aaron knocked a second time and questioned whether appellant would have allowed A.M. to stay elsewhere on a school night, appellant forced A.M. to crawl out his bedroom window to avoid having Aaron catch them together. A.M. then knocked on the front door in her pajamas, and Aaron let her in. When Aaron asked her why she was crying, she said she had had a bad dream and wanted to come home because she did not want Aaron to know what appellant had been doing to her.

Aaron's testimony corroborated A.M.'s. Aaron explained that he had awakened one night between 3:00 and 5:00 a.m., heard a noise, discovered A.M. was not in her room, and knocked on appellant's bedroom door to inquire as to A.M.'s whereabouts. Appellant told him A.M. was spending the night next door. Aaron returned to his room but for some reason he "didn't believe [appellant]." Aaron went back again to ask where A.M. was, and appellant repeated his previous answer. Aaron also testified that appellant told him the screen to appellant's bedroom window, which Aaron said had been in place when he went to bed that

- 3 -

evening, was out of the window and that he wanted Aaron to go outside to fix it. Before Aaron could do so, he heard a knock at the front door and opened it to find A.M. standing there. A.M. came into the house as Aaron went outside to replace the screen in the window. After Aaron came back into the house, appellant admitted to Aaron he had had "another woman" in the house but "didn't say who" and that he had the woman leave through his bedroom window. Although appellant told Aaron he did this so that A.M. would not see the woman, this rationale contradicted appellant's statement to Aaron moments earlier that A.M. was at the neighbors' house, thereby indirectly supporting A.M.'s testimony that it was she who was in appellant's room.

The testimony of A.M. and Aaron was sufficient to support appellant's conviction for the forcible sodomy of A.M.

Appellant's conviction for attempted aggravated sexual battery was based on the events of the morning of Saturday, July 21, 2007. Within minutes of those events, A.M. reported to her best friend Savannah what appellant had tried to do to her; with Savannah's encouragement, A.M. reported those same events to her mother within about twenty-four hours, and to police within thirty-six hours. A.M. testified in detail about the criminal behavior appellant engaged in on the morning of July 21, 2007, and her "complaint[s] of the offense recently after commission of the offense" provided "corroborat[ion of] [her] testimony." See Code § 19.2-268.2 (allowing admission of evidence that a victim of criminal sexual assault made "a recent complaint" to corroborate the victim's testimony).

A.M. testified that appellant ordered her into the house and into his room, locking all the doors, and then "told [her] to get on his bed." He said "he wanted some titties and ass," and although she said no, he unzipped his pants. The evidence established A.M. was fifteen at the time. This evidence, coupled with the evidence of appellant's prior acts of completed abuse as

relevant to his intent, was sufficient to prove appellant was guilty of attempted aggravated sexual battery. See Code § 18.2-67.3 (defining aggravated sexual battery as sexually abusing the complaining witness where, *inter alia*, the abuser is a parent and the complaining witness is at least 13 but less than 18 years old); Code § 18.2-67.5(B) (proscribing attempted aggravated sexual battery); Code § 18.2-67.10(6) (defining sexual abuse).

Other witnesses corroborated A.M.'s testimony about the steps appellant took to be alone with A.M. that morning. A.M. testified appellant "kept insisting" that she leave her own room, where she and Savannah had slept, to lie on his bed, ostensibly to get some rest before she left to go to the beach with her mother. He also encouraged Savannah to agree to ride home with A.M.'s stepmother, Christina, who was leaving to go to the store. When Savannah ultimately declined the suggestion of a ride and she and A.M. went outside to walk the dog, appellant first issued instructions to the girls not to leave the street with the dog, and then after A.M.'s stepmother departed for the store, he ordered A.M. back into the house for what he termed a private conversation, and he directed Savannah to walk the dog around the block. Savannah corroborated A.M.'s testimony regarding these events, and the trial court specifically found that "Savannah in particular was a good witness."

Other witnesses also corroborated A.M.'s testimony that appellant locked the doors to the residence when he took A.M. inside. Aaron testified that when he arrived at the house that morning, which Savannah said was about five minutes after appellant took A.M. into the house, he found all the doors locked and all the blinds drawn. A.M. testified that when Aaron arrived and knocked or rang the bell, she unlocked appellant's bedroom door and ran out of the house. A.M. was crying, and Savannah corroborated A.M.'s testimony that when Cooper asked why she was crying, appellant, in what the trial court could conclude was an effort to conceal the real reason for A.M.'s tears, said it was because Savannah was not going with them to the beach.

Savannah overheard appellant apologize for his actions, saying, "Honey, I wasn't really gonna do it."

Appellant's wife, Christina Moran, gave testimony clearly in conflict with that of Savannah, testimony apparently designed to support the position that appellant lacked opportunity to commit the acts alleged to have occurred on July 21, 2007. By accepting A.M.'s, Aaron's, and Savannah's testimony about the events of July 21, 2007, the trial court necessarily rejected Christina's.

Despite the trial court's express credibility findings, appellant points to four "factors" he contends show "why A.M.'s testimony as a matter of law is unworthy of belief: 1) the nexus with an ongoing custody dispute involving Teresa Cooper; 2) the contradictions with physical evidence; 3) contradictions with A.M.'s testimony and recantations; and 4) A.M. moving back to [appellant's] vicinity." The trial court had evidence before it on all of these issues when it concluded A.M.'s testimony and the corroborating evidence proved appellant committed the charged acts of forcible sodomy and attempted aggravated sexual battery. Appellant's arguments on these issues erroneously rely on a view of the evidence in the light most favorable to him rather than in the light most favorable to the Commonwealth. Viewing the evidence in the light most favorable to the Commonwealth, the party prevailing below, we hold none of these factors rendered A.M.'s testimony inherently incredible as a matter of law.

II.

For these reasons, we hold the evidence was sufficient to support appellant's convictions for forcible sodomy and attempted aggravated sexual battery, and we affirm.

Affirmed.