COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judge McClanahan and Senior Judge Willis
Argued at Richmond, Virginia


DAVID KANOELANI ASHFORD

                                                          OPINION BY
v.        Record No. 2158-04-2              CHIEF JUDGE JOHANNA L. FITZPATRICK
                                                         FEBRUARY 28, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF NEW KENT COUNTY
Thomas B. Hoover, Judge

V. James Ventura (Woodbridge, Ventura & Kelly, on briefs), for
appellant.

Stephen R. McCullough, Assistant Attorney General (Judith
Williams Jagdmann, Attorney General, on brief), for appellee.


David Ashford (appellant) appeals his convictions in a jury trial of attempted capital

murder for hire, in violation of Code §§ 18.2-25 and 18.2-31, and solicitation of capital murder

for hire, in violation of Code §§ 18.2-29 and 18.2-31.  Appellant contends that (1) his actions did

not amount to the requisite "overt act" necessary to be convicted of attempted capital murder for

hire, and (2) the presentation of both charges to the jury in the same trial was error.  We hold that

appellant's actions were sufficient to support a conviction of attempted capital murder for hire

and that the trial court did not err in allowing both charges to be presented to the same jury.

Therefore, we affirm.

## I.  BACKGROUND

We view the evidence in the light most favorable to the Commonwealth, the prevailing

party below, regarding as true all credible evidence supporting the Commonwealth's position.

Summerlin v. Commonwealth, 37 Va. App. 288, 294-95, 557 S.E.2d 731, 735 (2002).  In May

2003, appellant was charged with a number of offenses against his estranged wife, and placed in Henrico County East Regional Jail. While an inmate there, appellant met Landon Onek (Onek) and began talking about killing his wife. After a number of discussions, appellant finally asked Onek to kill his wife. In exchange, appellant stated that he would give Onek a car, a gun, and one thousand dollars. Appellant gave Onek detailed maps of his wife's neighborhood, her workplace, and a calendar of when he wanted her killed. Appellant's wife testified that the drawings were accurate. Onek told his attorney about the conversations with appellant, and his attorney advised him to cooperate with police officials.

The police interviewed Onek and viewed the maps and diagrams that appellant had drawn. The officers also gave Onek the phone number of a police investigator who would pretend to be a hit man for him to give to appellant. Onek gave the phone number to appellant, and the following day appellant called the investigator who posed as a hit man. Appellant told him that he wanted his wife killed, and the investigator agreed to kill appellant's wife if appellant paid him two thousand dollars. Appellant later told Onek about the conversation and the terms of the agreement.

During the phone conversation, appellant obtained the officer's address. A few days later, the investigator received maps of appellant's wife's house and workplace, a description of the visitation arrangements for appellant's children, and a letter that stated that appellant wanted his wife killed that weekend and that "there is no love lost, so be brutal if you need to." The following day, two thousand dollars arrived at the officer's address along with pictures of appellant's wife.

Appellant was indicted for solicitation of capital murder for hire, in violation of Code §§ 18.2-29 and 18.2-31, and with attempted capital murder for hire, in violation of Code

§§ 18.2-25 and 18.2-31.[1]  At trial, appellant made a motion to require the Commonwealth to elect between the charges of solicitation and attempted murder for hire because the charges should be merged.  The trial court denied the motion.  At the end of the Commonwealth's evidence, appellant moved to strike the charge of solicitation, arguing again that the offense of solicitation merged into attempted murder and that both charges could not go forward.  That motion was also denied.  The jury convicted appellant of both offenses.

After trial, appellant moved to set aside the jury verdict and to grant a new trial on the grounds that appellant committed no direct act and, thus, was wrongly convicted of attempted capital murder for hire and that the jury was prejudiced by the presentation of both charges at the same trial.  In response to the motions, the judge stated:

> [W]hat more could [appellant] have done towards hiring a hit man than talking with him on the phone, giving him maps as to where the target, his wife, worked and lived, her parents lived, her grandparents lived; discussions telling him how to accomplish the act, making it look like it was a burglary that she had walked into and was killed; giving him instructions along those lines and further again paying $2,000 in cash through his mother?

Counsel for appellant responded:  "Mr. Ashford may have done everything he had to."  The trial judge denied appellant's motions.

## II.  ANALYSIS

### A.  ATTEMPTED CAPITAL MURDER FOR HIRE

Appellant first contends that he was wrongfully convicted of attempted capital murder for hire because there was insufficient evidence of an overt act.  Appellant acknowledges that he did everything in his power to have his wife killed, but argues that the law requires the hit man perform an additional act toward the commission of the crime.

---

[1] Appellant was also charged with additional offenses, including violation of a protective order, breaking and entering, and abduction, but appellant moved to sever those charges, and the court granted that motion.  Those charges are not at issue in this appeal.

Whether the actions of a particular defendant rise to the level of an attempted crime is a fact-specific inquiry that must be decided on a case-by-case basis. Howard v. Commonwealth, 207 Va. 222, 228, 148 S.E.2d 800, 804 (1966). There are certain guiding principles, however. An attempt to commit a crime consists of: (1) an intent to perpetrate the crime, and (2) a direct act towards its commission. Sizemore v. Commonwealth, 218 Va. 980, 983, 243 S.E.2d 212, 213 (1978). The act must be more than mere preparation. Martin v. Commonwealth, 195 Va. 1107, 1110-11, 81 S.E.2d 574, 576 (1954); Fortune v. Commonwealth, 14 Va. App. 225, 229, 416 S.E.2d 25, 28 (1992). The distinction is that preparation "consists in devising or arranging the means or measures necessary for the commission of the offense and [] the attempt is a direct movement towards the commission after the preparations are made." Martin, 195 Va. at 1111, 81 S.E.2d at 577 (citation omitted). Additionally, where the intent is clearly shown, "'any slight act done in furtherance of this intent will constitute an attempt.'" Siquina v. Commonwealth, 28 Va. App. 694, 701, 508 S.E.2d 350, 354 (1998) (quoting Fortune, 14 Va. App. at 229, 416 S.E.2d at 28).

Appellant clearly intended that his wife be murdered. He spoke incessantly about her impending death while he was in jail; attempted to hire two individuals to kill her; and drew detailed diagrams and maps in order to effectuate her murder. The issue, then, is whether his actions amount to an overt act in furtherance of the crime. Appellant has conceded that he did everything possible to accomplish the murder of his wife. Appellant argues, however, that because the hit man did not actually attempt to kill his wife that appellant cannot be found guilty of the attempt. Appellant relies on Hicks v. Commonwealth, 86 Va. 223, 9 S.E. 1024 (1889), in making this assertion.

In Hicks, the defendant was found guilty of attempting to administer poison with the intent to kill or injure another person. Id. at 224, 9 S.E. at 1024. The defendant spoke to Laura

Long and asked her to poison the victim. Id. The defendant told her he was going to buy the poison and arranged a meeting with Long later that night. Id. at 224-25, 9 S.E. at 1025. That night, the defendant's co-conspirator met Long and handed her the poison. Id. at 225, 9 S.E. at 1025. The co-conspirator directed Long to put the poison in the victim's coffee and to raise the alarm when the victim died. Id. She also offered to reward Long. Id. At that point, Long signaled to men in hiding and the co-conspirator fled. Id. Long "testified that she never agreed to administer the poison." Id.

In reversing the conviction, the Supreme Court determined that the defendant's actions were mere preparation, and explained, "as the party to whom the poison was delivered refused to administer it, *or to do any act in furtherance* of the design, there has been no direct act done towards the commission of the offense, and, consequently, no attempt." Id. at 229, 9 S.E. at 1026 (emphasis added).

Hicks is distinguishable from the facts of the instant case. The defendant in Hicks was convicted of attempting to administer poison, a different substantive offense than attempting to commit murder for hire. Id. at 224, 9 S.E. at 1024. Soliciting an accomplice is not an element of poisoning whereas hiring a hit man is an overt act in furtherance of murder for hire, and it is an essential element of the offense.

Other courts addressing attempted murder for hire have reasoned that where a defendant has done everything possible to effectuate the murder, the hired killer's inaction is no bar to a conviction. The Supreme Court of Alaska opined "when the one hiring another to commit a crime has done everything he can to accomplish the criminal act through the hand of another and his conduct is no longer equivocal . . . then he (the employer) has committed the crime of attempt." Braham v. State, 571 P.2d 631, 637 (Alaska 1977). Other courts have similarly upheld attempt convictions: "[w]e can envision nothing else the appellant could possibly have done to

- 5 -

effect what he believed would be his wife's murder, short of committing the act himself (which is precisely what he did not want to do)." United States v. Church, 29 M.J. 679, 688 (A.C.M.R. 1989). See also State v. Mandel, 278 P.2d 413, 416 (Ariz. 1954) (defendant guilty of attempt where she "did everything she was supposed to do to accomplish the purpose [and] had it not been for the subterfuge, the intended victim would have been murdered"); Stokes v. State, 46 So. 627, 628-29 (Miss. 1908) (same); State v. Gay, 486 P.2d 341, 346 (Wash. Ct. App. 1971) (defendant guilty of attempt where "she had done everything that was to be done by her to accomplish the murder").

In the instant case, appellant had done much more than mere preparation. He requested two different people to kill his wife. He formulated diagrams of his wife's house and workplace, detailed when she would be at home and when the children would be away, and completed the payment of two thousand dollars to the hit man for the murder. As the trial judge noted and counsel for appellant admitted, appellant did everything within his power to have his wife murdered and completed all actions necessary to employ one for a "murder for hire." Consequently, the actions taken by appellant were sufficient to support a conviction of attempted capital murder for hire, and the law does not require the hit man to perform the useless act of pretending to actually shoot appellant's wife. To hold otherwise would be to render the offense "attempted murder for hire" a nullity. Because appellant had both the intent to commit murder for hire and completed a direct step in the commission of murder for hire, the trial court did not err in allowing the charge of attempt to go to the jury and in upholding the jury's verdict.

## B. JURY PREJUDICE

Appellant next argues that the trial court erred in failing to require the Commonwealth to elect between the charges of attempted murder and solicitation to commit murder because the

facts supporting each charge could be misinterpreted by the jury to support the other offense, thereby prejudicing the jury.[2]

The Commonwealth may be compelled to elect between charges "if it appears that the accused would be put to a disadvantage in presenting his defense, or that the minds of the jury might be confused or distracted from proper consideration of the evidence on the main issues." Bryant v. Commonwealth, 189 Va. 310, 315, 53 S.E.2d 54, 56 (1949). Whether the Commonwealth should be compelled to elect is "within the sound judicial discretion of the trial judge, whose decision will not be reversed on appeal unless it appears that the rights of the accused may have been adversely affected." Id.; accord Cardwell v. Commonwealth, 248 Va. 501, 510, 450 S.E.2d 146, 152 (1994). The court may exercise its discretion "if justice does not require separate trials" and the offenses are based on "the same act or transaction, or on two or

---

[2] Initially, the Commonwealth argues that this ground is barred by rule 5A:18 because this claim was not raised before the trial court.

Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling." The purpose of this rule is to ensure that objections are "promptly brought to the attention of the trial court with *sufficient specificity* that the alleged error can be dealt with and timely addressed and corrected." Redman v. Commonwealth, 25 Va. App. 215, 220, 487 S.E.2d 269, 272 (1997) (citation omitted) (emphasis added).

Before trial, appellant requested the Commonwealth to elect between the charges of solicitation and attempt "because the two cases should merge, and because the facts are so similar and overlapping." The trial court denied the motion. At the close of the Commonwealth's evidence, appellant moved to strike, and one of the reasons cited was that the two charges of solicitation and attempt "should merge." Again, the motion was denied. After the jury announced its verdict, appellant asked the court to retroactively consider a motion to strike, and renewed his motion "on the merger issue." The judge denied the motion.

The jury verdict was dated March 29, 2004. On August 13, 2004, appellant filed a renewed motion to set aside the jury's verdict, for the first time raising the issue of jury prejudice resulting from both of the charges being combined. The trial court denied the motion.

Appellant's objections at trial satisfied Rule 5A:18. The requests were specific enough for the trial judge to understand the purpose of the objection and to respond intelligently to it. See Akers v. Commonwealth, 31 Va. App. 521, 527, 525 S.E.2d 13, 16 (2000). Thus, this Court may consider the issue of whether the jury was prejudiced by being presented with both charges.

more acts or transactions that are connected, or constitute parts of a common scheme or plan." Rules 3A:10(c), 3A:6(b).

The actions which took place were part of an unbroken chain of events: the solicitation of Onek prompted Onek's discussions with his attorney which in turn led to hiring a police "hit man." Onek listened to the phone conversation between appellant and the investigator and viewed the package sent out to the hit man. Appellant's conversations with Onek and with the feigned hit man evidence his firm intent to murder his wife. Because the solicitation and attempt are both parts of a "common scheme or plan," the trial court did not abuse its discretion in failing to require the Commonwealth to elect between charges. See Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970) ("testimony of other crimes is admissible where the other crimes constitute a part of the general scheme of which the crime charged is a part").

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.