COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Alston and Senior Judge Haley
Argued at Richmond, Virginia


ARNOLD RAPHAEL EASON, S/K/A
  ARNOLD R. EASON, JR.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1444-15-2                      JUDGE JAMES W. HALEY, JR.
                                                    NOVEMBER 8, 2016

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Gary A. Hicks, Judge

        Vaughan C. Jones for appellant.

        Christopher P. Schandevel, Assistant Attorney General (Mark R.
        Herring, Attorney General, on brief), for appellee.


        Arnold Raphael Eason, appellant, appeals his convictions of statutory burglary, carjacking,

aggravated sexual battery, unlawful wounding, attempted murder, strangulation, abduction for

pecuniary benefit, and robbery.  Appellant contends the trial court erred by denying his motion to

present demonstrative evidence and that his convictions were not supported by sufficient evidence

of guilt.  We disagree.  Accordingly, we affirm the judgment of the trial court.

                                        Background

        On October 8, 2014, S.S. was in her real estate office for a model home when a man arrived

and introduced himself as "Mr. Simpson."  The man indicated he was interested in the model home.

S.S. took him to the model home to give him a tour.  S.S. described the man as wearing dark pants,

a red shirt, a jacket, brown dress shoes with no socks, a baseball hat, and sunglasses.  While touring

the house, the man kept his sunglasses and hat on.  While on the second floor, S.S. remained in a

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

loft area while the man looked in a bedroom. As he emerged from the room, S.S. noticed the man had a latex glove on his hand and a black plastic trash bag protruding from his pocket. S.S. said, "Oh my God" and "froze." The man pulled the bag over her head, and the two began to struggle. The man knocked S.S. face-first to the floor, and her nose began to bleed. The bag was tight around her neck, and she could not breathe. The bag had a drawstring on it that S.S. could not tear away. However, as the two continued to struggle, S.S. managed to poke a hole in the bag and then tear a piece away. Angered by this action, the man grabbed her arm and pulled it behind her head until she thought it was going to "snap." S.S. grabbed the man's crotch in attempt to hurt him and force him to let her go.

The man let her arm go, but then pulled off her pants and underwear. The bag was no longer on S.S. when the man flipped her over. S.S. covered her face and told him, "I can't see you, do whatever you have to, please don't kill me," in hopes that if she could not see him he would not kill her. The man licked her thighs and her vagina and flipped her back over onto her stomach. He shoved pills into her mouth telling her to swallow them. S.S. did not swallow the pills but hid them in her mouth. When the man stood up, she spit the pills out on the floor and hid them underneath herself. The man picked up her cellphone and told her, "You'll be dead in a few minutes." S.S. put her head down, peered under her armpit, and saw the man calmly descending the stairs.

After S.S. heard the alarm to the door "ding," she put her pants on and ran outside. She immediately reported the attack to a contractor and a homeowner who were outside nearby. The police and an ambulance soon arrived, and S.S. went to the hospital. The hospital examiner found multiple symptoms of strangulation. S.S. was unable to identify appellant from a photographic array, but narrowed the choice to two photographs, one of which was appellant. At trial she testified she did not notice gold teeth or anything unusual about her attacker's teeth, but that she was not focusing on his mouth.

That same afternoon, L.J. was in her kitchen when she heard a knock at the door leading to her garage. She had left the garage door open because she was expecting a repairman. She noticed the door open slightly and heard a man say, "Hello, help me." L.J. stated she screamed and walked quickly to the door. The man stated he had been bitten by a dog. L.J. peered out the door and told the man to wait there. L.J. noticed the man was perspiring and out of breath. She attempted to close the door, but the man forced his way into the house. L.J. ran to her front door and partially opened it, but the man kept her from opening it all the way. She put her arm through the opening such that the door closed on her arm when the man pushed it. L.J. started to scream through the opening of the door. The man put his back against the door and told her, "I won't hurt you if you give me your car." L.J. agreed, and the man allowed her to pull her arm back into the house. L.J. walked back to the kitchen and retrieved her keys from her purse. The man took the keys and her purse, which was on the counter within arm's reach of L.J., and walked out the door to the garage. As the man backed her car out of her driveway, L.J. called 911.

Investigators found L.J's car in a parking lot where appellant was known to park his delivery truck. Investigators found appellant's finger and palm prints inside the driver's side door of L.J.'s car. Appellant's truck was not parked in the lot, but his wife testified that the truck was parked at their house that same evening, though it had not been there that morning when she left the house. Her house was next door to the model home.

Investigators also searched the area between the model home and L.J.'s home, about a quarter of a mile away. They found a shoe, a camouflage hat with a red brim with the word "Miami" on it, a cellphone case, and the back of S.S.'s cellphone. Appellant's ex-girlfriend testified she had given appellant a hat and a pair of shoes like the ones the investigators found. Forensic evidence showed that S.S.'s DNA was on the front of the hat. The blood on the cellphone case also

contained S.S.'s DNA mixed with appellant's DNA. Appellant's DNA was identified with a certainty of "one in 1.5 billion in the black population."

Appellant's ex-girlfriend also recounted that on the evening of the offenses, appellant came to see her. Appellant was rubbing his head. When she asked what was wrong, appellant refused to answer. When a police car pulled into a driveway three doors down, appellant "freaked out and ran in the house." Appellant told her, "If the police come in here, you haven't seen me, you don't know where I am and you don't know how to get in touch with me."

At trial, appellant sought to prove that the victims' identification of appellant was mistaken. Neither victim noticed their assailant had gold teeth. Counsel proffered that appellant is missing most of his front teeth, due to a childhood injury, and that he has had custom gold teeth for more than thirty years. Without the teeth, appellant's mouth appears to be deformed. Counsel asked the trial court to allow appellant to remove his gold teeth in front of the jury, while a defense witness testified concerning appellant's appearance. The trial court determined such evidence would be testimonial and denied appellant's motion to present the physical demonstration. The defense witness testified at trial that appellant has had the gold teeth for decades and that he wore them "every day, all day."

Physical Demonstration

Appellant contends that the trial court erred by denying his motion to allow him to physically show his false gold teeth to the jury and allow them to see his appearance without the teeth in his mouth. In support of his motion, appellant argued the evidence was relevant and material to the issue of the identity of the assailant in both attacks. Appellant maintains that neither victim could identify him from the photographic arrays, nor did they describe their attacker as having gold teeth.

Assuming without deciding that the trial court erred by refusing to allow the physical demonstration, we hold that any such error would be harmless. Appellant did not argue before the trial court any constitutional claim in support of his motion. Thus, any error would be non-constitutional error. "Harmless error requires a showing that the parties 'had a fair trial on the merits and substantial justice has been reached.'" Lawrence v. Commonwealth, 279 Va. 490, 497, 689 S.E.2d 748, 752 (2010) (quoting Code § 8.01-678). A "nonconstitutional error is harmless if the reviewing court can be sure that the error did not influence the jury and only had a slight effect." Id. "But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected" and the verdict "cannot stand." Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)). "No trial is perfect, and error will at times creep in." Lavinder v. Commonwealth, 12 Va. App. 1003, 1009, 407 S.E.2d 910, 913 (1991) (*en banc*) (quoting Parsons v. Commonwealth, 154 Va. 832, 852, 152 S.E. 547, 554 (1930)). "Every man is entitled to a fair trial and to nothing more, and so . . . out of the imperative demands of common sense, has grown the doctrine of harmless error." Id. (quoting Oliver v. Commonwealth, 151 Va. 533, 541, 145 S.E. 307, 309 (1928)) (omission in original).

Here, although appellant was not allowed to demonstrate before the jury that he had distinctive teeth, a defense witness testified to those unique characteristics. Neither victim noted this aspect of their assailant's appearance. Indeed, S.S. testified she did not focus on his teeth and she did not notice gold teeth. However, the victims' failure to note this particular aspect of their attacker was not the only evidence at trial to prove identity. The forensic and circumstantial evidence was far more persuasive in proving appellant's guilt. Appellant's fingerprints were in L.J.'s car, which was found parked where appellant normally parked his delivery truck. Appellant's

DNA was mixed with S.S.'s DNA on the back of her cellphone. S.S.'s DNA was on a hat that appeared to be the same as one given to appellant. Although neither victim could identify appellant in the photographic arrays, both were able to narrow the possibilities to appellant and other suspects. L.J. also identified appellant in court, stating she was certain he was her assailant. Further, appellant was living next door to the model home, was home alone during the day, and became upset at seeing the police and told his ex-girlfriend to not tell them he was there or that she could get in touch with him. The combined weight of all this evidence supports the finding that the lack of a physical demonstration regarding appellant's false gold teeth did not affect the jury's verdict in any substantial manner. Accordingly, the error, if any, was merely harmless and the verdicts shall stand.

Sufficiency of Evidence at Trial

Appellant's remaining assignments of error challenge the sufficiency of the evidence to support each of the convictions. Appellant specifically argues the following:

1. The evidence was insufficient to prove he had the specific intent to kill to support the attempted murder conviction;

2. The evidence was insufficient to prove the requisite restraint and intent for pecuniary benefit to support the abduction conviction; and

3. The trial court erred by finding sufficient evidence that he was the criminal agent to support all of the convictions.

> This Court must examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it. We review the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court and accord the Commonwealth the benefit of all reasonable inferences deducible from the evidence. After so viewing the evidence, the question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In sum, if there is evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial.

Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (citations and internal punctuation omitted).

We start by noting the evidence was sufficient to prove appellant was the criminal agent. As suggested above, the forensic and circumstantial evidence was overwhelming that appellant was the criminal agent of the offenses against S.S. and L.J. Appellant's DNA was mixed with S.S.'s DNA on her cellphone case. Her DNA was on a hat identified as a gift to appellant. These items were found near a shoe also identified as being similar to a pair of shoes given to appellant. Appellant's fingerprints were inside L.J.'s car. No evidence at trial suggested any innocent explanation for all this forensic evidence.

Further, appellant became upset and retreated into his ex-girlfriend's house when he saw the police on the same day as the crimes occurred. He told his ex-girlfriend not to give any information about him to the police if they inquired about him. Appellant's actions point to a consciousness of guilt suggesting actual guilt. See Palmer v. Commonwealth, 14 Va. App. 346, 348-49, 416 S.E.2d 52, 53 (1992) ("[I]t is today universally conceded that the fact of an accused's flight, . . . *concealment*, . . . and *related conduct* are admissible as evidence of consciousness of guilt, and thus of guilt itself." (emphasis added) (quoting Langhorne v. Commonwealth, 13 Va. App. 97, 102, 409 S.E.2d 476, 480 (1991))). Finally, L.J. made an unequivocal in-court identification of appellant as her attacker. This evidence, taken in its entirety, was sufficient to prove beyond a reasonable doubt that appellant was the criminal agent of all the offenses.

Likewise, the evidence was sufficient to prove appellant's specific intent to kill S.S. in support of the attempted murder conviction. "Whether the actions of a particular defendant rise to the level of an attempted crime is a fact-specific inquiry that must be decided on a case-by-case basis." Ashford v. Commonwealth, 47 Va. App. 676, 681, 626 S.E.2d 464, 466 (2006). "An attempt is composed of two elements: the intent to commit the crime, and a direct, ineffectual act

done towards its commission." Parsons v. Commonwealth, 32 Va. App. 576, 582, 529 S.E.2d 810, 813 (2000). "Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case . . . . Intent may be shown by a person's conduct and by his statements." Whitt v. Commonwealth, 61 Va. App. 637, 660, 739 S.E.2d 254, 265 (2013) (*en banc*) (quoting Long v. Commonwealth, 8 Va. App. 194, 198, 379 S.E.2d 473, 476 (1989)). "[T]he fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." Moody v. Commonwealth, 28 Va. App. 702, 706-07, 508 S.E.2d 354, 356 (1998).

Appellant placed a plastic bag over S.S.'s head and attempted to tie it off around her neck. Appellant used sufficient force such that, for a brief period, S.S. could not breathe and she thought she was going to die. S.S. suffered injuries consistent with strangulation. Following the attempt to strangle and suffocate S.S., appellant shoved hallucinogenic pills in S.S's mouth and told her she would be dead soon. The fact that the evidence did not prove whether the quantity given could have caused S.S.'s death is not pertinent to our analysis. See Masika v. Commonwealth, 63 Va. App. 330, 335, 757 S.E.2d 571, 573 (2014) ("It is clear from our jurisprudence that factual impossibility is not a defense to a crime" where "defendant is prevented from bringing about the intended result due to a fact or circumstance unknown to him."). The jury could reasonably conclude from appellant's conduct and statements that he intended to kill S.S., either through suffocation or overdose from the hallucinogenic pills. Thus, the evidence was sufficient, beyond a reasonable doubt, to support the attempted murder conviction.

Finally, appellant contends the evidence was insufficient to prove he seized, detained, or transported L.J. or intended to extort a pecuniary benefit in support of the abduction conviction. In

support of appellant's first contention, appellant argues that any detention was incidental to the robbery conviction.[1]

> "Whether an abduction is merely incidental to another crime is a question of law. However, because no two crimes are exactly alike, determining whether an abduction is incidental necessarily requires consideration of the historical facts of each case." Hoyt v. Commonwealth, 44 Va. App. 489, 496 n.4, 605 S.E.2d 755, 758 n.4 (2004). Therefore, the trial court's findings of historical fact are controlling but we review the court's application of those facts to the law *de novo*. Smith v. Commonwealth, 56 Va. App. 711, 721, 697 S.E.2d 14, 19 (2010).

Epps v. Commonwealth, 66 Va. App. 393, 402, 785 S.E.2d 792, 796 (2016).

> "[T]he only issue when abduction is charged alongside an offense for which detention is an intrinsic element is whether any detention exceeded the minimum necessary to complete the required elements of the other offense." Lawlor v. Commonwealth, 285 Va. 187, 225, 738 S.E.2d 847, 869 (2013). The issue becomes whether sufficient evidence exists to support the factfinder's determination that a defendant used greater restraint than that necessary to commit the simultaneously charged offense. See Powell v. Commonwealth, 261 Va. 512, 541, 552 S.E.2d 344, 360-61 (2001).

Id. at 403, 785 S.E.2d at 797.

When appellant entered L.J.'s home, she ran to the front door. She attempted to open the front door, but appellant stopped her and shut the door on her arm, preventing her from escaping. It was not until appellant had L.J. trapped at the door for several seconds that he told her he would not hurt her if she gave him the keys to her car. Appellant's actions at the door were separate, in place and time, from the actual robbery of her purse. Further, the detention at the door prevented detection of what was occurring in the house. Although the detention allowed appellant to

---

[1] The Commonwealth asserts that this issue was not argued to the trial court in violation of Rule 5A:18. However, counsel argued, "there was some physical force that was used to, to procure the robbery, but to say that he restrained her somewhere, when his entire effort was to take the keys from her . . . I would say . . . that there's been no abduction . . . ." We find this argument was sufficient to put the trial court on notice that appellant challenged the sufficiency of evidence to prove a detention beyond that necessary to commit the robbery.

- 9 -

accomplish the robbery, later in the kitchen, the question is "not . . . whether the restraint was merely useful to perpetrating [the robbery] -- but whether the restraint was 'intrinsic' to . . . or 'inherent' in . . . the [robbery]." Pryor v. Commonwealth, 48 Va. App. 1, 6, 628 S.E.2d 47, 49 (2006) (citations omitted). The evidence was sufficient to prove that the detention at the door exceeded the restraint necessary to accomplish the robbery of the purse and was not intrinsic to, or inherent in, the separate and distinct crime.

Appellant also claims the evidence failed to prove he intended to extort money or a pecuniary benefit from the abduction. Pecuniary benefit means "not only money, but everything that can be valued in money." Krummert v. Commonwealth, 186 Va. 581, 584-85, 43 S.E.2d 831, 832 (1947) (decided under predecessor to current abduction statute) (citations omitted). Here, appellant detained L.J. at the door and let her go once she agreed to give him her car keys. Taking a person's car to effect an escape constitutes "free transportation" which has a monetary value. Id. at 585, 43 S.E.2d at 833. Therefore the evidence was sufficient to prove beyond a reasonable doubt that appellant had the intent to gain a pecuniary benefit.

## Conclusion

The evidence was sufficient to prove beyond a reasonable doubt that appellant was the criminal agent in all the crimes. Any error in denying the physical demonstration of his false teeth would be harmless given the substantial weight of evidence proving his identity. The evidence demonstrated that appellant had the specific intent to kill S.S., the abduction of L.J. was not intrinsic to the robbery, and he abducted L.J. with the intent to extort money or a pecuniary benefit. Accordingly, the trial court did not err by denying appellant's motion to strike on all these grounds.

We find no reversible error and, thus, we affirm the convictions of statutory burglary, carjacking, aggravated sexual battery, unlawful wounding, attempted murder, strangulation, abduction for pecuniary benefit, and robbery.

Affirmed.