COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Humphreys and Friedman
Argued at Lexington, Virginia

SHARL KAJUAN BREAKLEY

MEMORANDUM OPINION BY[*]

v.        Record No. 0906-21-3        JUDGE ROBERT J. HUMPHREYS
                                      AUGUST 16, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge

Brooke Carroll, Assistant Public Defender (Eric T. Cronin, Senior
Trial Attorney, on briefs), for appellant.

Lucille M. Wall, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Sharl Kajuan Breakley appeals his convictions, following a bench trial, of simple abduction,

attempted statutory burglary, and misdemeanor sexual assault, in violation of Code §§ 18.2-47,

18.2-91, and 18.2-67.4.  Breakley asserts that the evidence is insufficient to support his convictions.

BACKGROUND

On appeal, "we review the evidence in the light most favorable to the Commonwealth."

*Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (*en banc*) (citation omitted).  That

principle requires us to "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all

fair inferences that may be drawn therefrom."  *Kelly v. Commonwealth*, 41 Va. App. 250, 254

(2003) (*en banc*) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Allyn Smith and Breakley were attempting to rekindle an old relationship in December 2019. On December 14, 2019, Smith and Breakley had argued about whether Breakley could come over to Smith's residence. The argument that started on the phone continued in the form of text messages.

While Smith was texting Breakley, she was also texting her daughters. Smith was attempting to coordinate when her daughters could come over to pick up a gaming console. Before Smith took a shower, she attempted to send a text message to one of her daughters that said, "come on." However, Smith inadvertently sent the message to Breakley.

After Smith got out of the shower, she received a call from her daughter indicating that someone was on the porch. Smith clothed herself, went to the front door, and found Breakley on the porch. Smith asked Breakley why he was there to which he replied that she had texted him to come over. Confused, Smith stated that she did not text him that. Smith told Breakley to wait on the porch and went inside to retrieve her phone.

Breakley, however, opened the screen door and entered the house. When Smith told Breakley to leave, he replied "[yo]u think I am playing with you." He then removed his shirt and pushed Smith into the bedroom. Smith attempted to fight back, but Breakley grabbed her arms and forced her into the bedroom where he pushed Smith onto the bed, lifted her shirt up, and began to fondle and bite her breasts. Eventually, Smith was able to kick Breakley off her. Breakley grabbed Smith's phone and ran into the kitchen. Smith tried to retrieve her phone while Breakley attempted to search through it. After a few moments, Breakley put the phone down and tried to pull Smith onto the counter and remove her pants. During the scuffle, Smith fell to the floor. As Smith was on the ground, she grabbed her phone and called her father, Allen Smith. Smith's phone had been connected to a Bluetooth speaker while she took a shower. When Allen answered the phone, he could be heard on the Bluetooth speaker.

Upon hearing Allen's voice, Breakley told Smith to have Allen "come over here and just kill [him] then." Smith testified Breakley went outside, grabbed an empty gas can, and attempted to pour it on the front of the house. Breakley then tried to light the bushes on fire. When he was unsuccessful, he walked around the house and tried to enter through the side doors and then the window. While Smith watched Breakley, she was on the phone with her mother who advised her to call the police. Smith hung up with her mother and called the police, who arrived shortly thereafter.

Allen testified he received a call from his daughter on December 14, 2019. When Allen answered he heard rustling in the background and his daughter say, "get out." Allen told his daughter to call the police, and he immediately left for Smith's home. When he arrived, he walked around the house and noticed two-by-four planks angled right underneath the back window. When Allen was there a week prior, the planks were not there. Allen testified the window was as high as he was tall. Smith confirmed that the window is high off the ground and that the planks had not been propped up underneath the window before the incident with Breakley.

Danville Police Officer Jones was dispatched to Smith's home. When Officer Jones arrived, she saw Breakley walking down the road towards Smith's house. Officer Jones asked Breakley if he would tell her what happened. In the body camera footage shown to the court, Breakley could be heard telling Officer Jones that Smith told him not to come by anymore. Officer Jones also saw "a board up against the house, near a window."

Upon the conclusion of the Commonwealth's evidence, Breakley moved to strike, specifically arguing that he did not have the intent to commit larceny or sexual assault when he entered the home. As to the sexual battery, Breakley contended that Smith did not make a complaint to Officer Jones immediately after the incident occurred. Concerning the abduction, Breakley asserted that there was no corroboration of Smith's account, she had no physical injuries, and the house was not in disarray. Regarding the attempt to break and enter, Breakley argued that

he was simply attempting to get Smith's attention so that they could talk. The circuit court overruled the motion.

After the defense rested its case, Breakley incorporated a renewed motion to strike within his closing argument, repeating his earlier arguments. The circuit court rejected Breakley's claims and convicted him of simple abduction, attempted statutory burglary, and sexual assault. This appeal follows.

ANALYSIS

Breakley challenges the sufficiency of the evidence to convict him of simple abduction, attempted statutory burglary, and misdemeanor sexual assault. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018) (alteration in original)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Specifically, Breakley argues that the trial court should not have believed Smith's version of events and that the Commonwealth failed to prove he acted with the requisite intent or that he took a direct, but ineffective, act toward the commission of statutory burglary.

A.

Breakley contends that the Commonwealth failed to show he detained or sexually abused Smith. He argues that Smith's testimony was so inherently incredible that she should not be believed.

"The fact finder, who has the opportunity to see and hear the witnesses, has the *sole* responsibility to determine their credibility, the weight to be given their testimony, and the inferences to be drawn from proven facts." *Commonwealth v. McNeal*, 282 Va. 16, 22 (2011) (quoting *Taylor v. Commonwealth*, 256 Va. 514, 518 (1998)). "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)). "The conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984)). "In all other cases, we must defer to the conclusions of 'the fact finder[,] who has the opportunity of seeing and hearing the witnesses.'" *Id.* (quoting *Schneider v. Commonwealth*, 230 Va. 379, 382 (1985)). "These same principles apply in cases involving rape, sodomy and other sexual offenses, which may be sustained solely upon the testimony of the victim, even in the absence of corroborating evidence." *Id.* at 548-49; *see Fisher*, 228 Va. at 299.

"Any person who, by force, intimidation, or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another person with the intent to deprive such other person of his personal liberty . . . shall be deemed guilty of 'abduction.'" Code § 18.2-47(A).

"An accused is guilty of sexual battery if he sexually abuses, as defined in § 18.2-67.10, the complaining witness against the will of the complaining witness, by force, threat, intimidation, or ruse." Code § 18.2-67.4(i). "'Sexual abuse' means an act committed with the intent to sexually molest, arouse, or gratify any person, where: [t]he accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts." Code § 18.2-67.10(6)(a).

The circuit court specifically rejected Breakley's version of the events and found Smith's testimony to be more credible. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan*, 58 Va. App. at 702 (quoting *Marable*, 27 Va. App. at 509-10).

Here, the record establishes that Breakley came to Smith's home because he was mistakenly invited. An argument between Breakley and Smith ensued. After gaining access to the home, Breakley grabbed Smith and pushed her into the bedroom against her will. There he lifted Smith's shirt and began to fondle and bite her breasts. After Smith kicked Breakley off her, he grabbed Smith's phone and went into the kitchen attempting to search through it. Smith followed to get her phone back. Breakley then grabbed Smith, placed her on the counter, and attempted to take off her pants. During the scuffle, Smith and her phone ended up on the ground and Smith was able to call her father. Upon hearing Allen Smith's voice through the Bluetooth speaker, Breakley went outside, grabbed an empty gas can, and attempted to light some bushes

- 6 -

on fire. He then walked around the house and attempted to get in the side doors and then the back window before leaving. Breakley's convictions "may be sustained solely upon the testimony of the victim, even in the absence of corroborating evidence." *Ashby*, 33 Va. App. at 548-49; *see Fisher*, 228 Va. at 299. Nothing about Smith's testimony renders it contrary to human experience, and her testimony was sufficient to sustain convictions for abduction and sexual battery.

B.

Breakley also contends that the evidence was insufficient to convict him of attempted statutory burglary. Breakley asserts that the Commonwealth failed to prove he intended to commit statutory burglary or that Breakley took a direct, ineffectual act towards committing statutory burglary. Breakley argues that without Smith's testimony the only evidence in the record attesting to his intent was his testimony that he went to the window to speak to Smith. Additionally, Breakley argues that he did not appear at the window where the planks were found. Breakley further argues that it is physically impossible to enter the house from the back window where the planks were discovered because the planks were not propped up high enough for Breakley to lift himself through the window.

"Whether the actions of a particular defendant rise to the level of an attempted crime is a fact-specific inquiry that must be decided on a case-by-case basis." *Ashford v. Commonwealth*, 47 Va. App. 676, 681 (2006) (citing *Howard v. Commonwealth*, 207 Va. 222, 228 (1966)). "An attempt to commit a crime is composed of two elements: (1) The intent to commit it; and (2) a direct, ineffectual act done towards its commission." *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020) (quoting *Haywood v. Commonwealth*, 20 Va. App. 562, 565 (1995)). "The direct but ineffectual act is commonly referred to as an 'overt act.'" *Jones v. Commonwealth*, 70 Va. App. 307, 318 (2019) (*en banc*) (quoting *Jay v. Commonwealth*, 275 Va. 510, 525 (2008)).

"If any person . . . in the daytime breaks and enters . . . a dwelling house . . . with intent to commit murder, rape, robbery or arson . . . he shall be deemed guilty of statutory burglary." Code § 18.2-90. "If any person commits any of the acts mentioned in § 18.2-90 with intent to commit larceny, or any felony other than murder, rape, robbery or arson . . . he shall be guilty of statutory burglary." Code § 18.2-91.

"[I]ntent is usually proved by circumstantial evidence." *Slaughter v. Commonwealth*, 49 Va. App. 659, 667 (2007). "In burglary cases, the fact finder may infer from the entry that the purpose of the illegal entry was unlawful." *Id.* "Further, '[i]n the absence of evidence showing a contrary intent, the trier of fact may infer that a person's unauthorized presence in another's house was with the intent to commit larceny.'" *Id.* (quoting *Sandoval v. Commonwealth*, 20 Va. App. 133, 138 (1995)).

Here, two-by-four planks which had not been there before the incident were found below the back window at an angle. By Breakley's own admission, he walked around the home and knocked on the window after Smith told him to leave. Based on Breakley's behavior, statements, and actions, the circuit court reasonably inferred that Breakley attempted to re-enter Smith's house through the window using the two-by-four planks with an unlawful purpose. We will not disturb the circuit court's finding on appeal.

CONCLUSION

We find that the evidence was sufficient to convict Breakley of simple abduction, sexual assault, and attempted statutory burglary. Accordingly, we affirm the convictions.

*Affirmed.*