COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Causey, Chaney and Callins
Argued at Hampton, Virginia


MICHAEL DEAN SLYE

                                    MEMORANDUM OPINION[*] BY

v.       Record No. 1032-23-1           JUDGE DOMINIQUE A. CALLINS
                                       JANUARY 14, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Charles J. Maxfield, Judge Designate

Kevin E. Calhoun for appellant.

David A. Mick, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Michael Dean Slye appeals his convictions, following a jury trial, for first-degree murder

and use of a firearm in the commission of a murder, in violation of Code §§ 18.2-32 and -53.1.

On appeal, Slye argues that the evidence was insufficient to prove that he committed the murder

or that he did so with premeditation. For the following reasons, we disagree and affirm the

convictions.

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom."

*Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In August 2020, Darlene Darden (Darlene) was the general manager of Motel Zuma in Williamsburg, Virginia. Motel Zuma consists of two buildings separated by an alley where the motel's dumpsters were located. The front building houses the motel's offices and is nearest to Richmond Road. The rear building contains hotel rooms, some of which were under renovation in August 2020. Darlene lived with her long-term boyfriend, Slye, in the front building. Darlene's son, David Darden (David), lived in the rear building on the side facing the Howard Johnson hotel.

At around 8:30 p.m. on August 28, 2020, Darlene was meeting with the motel's owner, El Shamine, when they heard a noise.[1] Darlene looked out the office window and observed a man, later identified as the victim, Terrence Pressey, yelling and gesticulating wildly. Darlene asked Pressey what he needed and told him that "you're not supposed to be on the property."[2] Pressey appeared drunk and would not calm down, so Darlene and El Shamine called 911. Minutes later, James City County Police Sergeant Tiara Suggs responded to Darlene's complaint. Darlene told Sergeant Suggs that Pressey had disappeared and had likely taken the small footpath near the dumpsters that ran behind the nearby Cox building and connected Motel Zuma with the Howard Johnson hotel. Darlene also informed Sergeant Suggs that she had seen Pressey earlier

---

[1] El Shamine's first name was not disclosed at trial, and he was referred to as "Mr. Zuma" by other witnesses.

[2] The record is unclear as to whether Darlene had ever previously banned Pressey from the Motel Zuma property prior to August 28, 2020. But Sharon Neville, who worked at the front desk of the nearby Howard Johnson hotel, testified that she had banned Pressey from the Howard Johnson hotel property several times due to "incidents and issues we had at the hotel with [Pressey]" going on for over a year, where Pressey would "be hanging around the property causing problems" and be "out in the parking lot drinking and yelling."

that day while working in the motel's office. Darlene noted that Pressey appeared outside her window in the morning and glared at her before disappearing.

After talking with Darlene and beginning to patrol Motel Zuma for Pressey, Sergeant Suggs learned that Officer Randy Matthews had located Pressey at the Howard Johnson hotel next door. Upon arriving at the Howard Johnson hotel, Sergeant Suggs learned that Pressey had also been banned from that hotel. Consequently, Officer Matthews drove Pressey across the street to the Super Inn motel, where Pressey had a room. As he transported Pressey, Officer Matthews smelled alcohol on Pressey and could see that he was intoxicated. Once at the Super Inn, Officer Matthews watched Pressey take the elevator up to his room. Officer Matthews's dash camera footage showed that he dropped Pressey off at 9:09 p.m. that night.

At 9:30 p.m., David arrived home from work and had dinner with Darlene in her and Slye's room. While David and Darlene ate dinner, Slye came into the room to retrieve his antacid medication. Slye's medication was on the bathroom shelves across from the sink where many items were stored. After retrieving his medication, Slye left and went to continue renovations on rooms in the rear building of Motel Zuma.

At around 10:00 p.m., David left Darlene's room and went to his car, which was parked near Motel Zuma's offices. While walking around the parking lot, David noticed that Slye was on the opposite side of Richmond Road confronting Pressey near the Pavilion Shops and telling Pressey to stay off the Motel Zuma property. During the interaction, Pressey swung at Slye and Slye stepped backwards out of reach. After a few moments, Slye and Pressey parted ways. Pressey walked towards the Super Inn and went upstairs to his room, while Slye walked across Richmond Road and remained in the median of the road. David did not see Slye return to the Motel Zuma property.

David continued to walk around Motel Zuma's front parking lot while he texted and talked on his phone. While walking, David saw Pressey return to the Motel Zuma property. As Pressey passed David, Pressey asked David, "what, are you going to kick my ass, are you going to kill me[?]" Based on this interaction, David assumed Pressey was drunk and kept his distance from him. Pressey continued along the parking lot towards the rear Motel Zuma building, where David lost sight of him.

Minutes later, David heard "two pops" that sounded like gunshots. Scared from hearing the pop sounds, David froze still for five minutes until Slye, who emerged from the same area where David lost sight of Pressey, instructed David to go home. David then got into his car, drove through the alley, passed the dumpsters, and parked in front of his room. While driving to his room, David saw nothing unusual in the grassy area in front of the dumpsters.

The next morning, on August 29, 2020, Darlene woke up to a call that a resident found a body on Motel Zuma's grounds. Upon discovering the body near the dumpsters, Darlene immediately called 911. When James City County police officers arrived at Motel Zuma, they discovered Pressey's body face down in tall grass beside the motel's dumpsters. Because of the tall grass, Pressey's body was difficult to see. Pressey's hands were above his shoulders, and he clutched a lighter in one hand and a cigarette in the other. Blood was coming from Pressey's nose and mouth, and his facial injuries were consistent with falling forward on his face. Officers collected a cell phone and cigarettes from Pressey's pockets. An analysis of Pressey's cell phone revealed that the last interaction on the device was a call placed at 10:34 p.m. on August 28, 2020, which lasted until 10:45 p.m. Officer James Jackson, who responded to the call reporting Pressey's body, testified that Slye told him that the last time he saw Pressey was between 8:30 p.m. to 9:00 p.m. on August 28, 2020.

Dr. Elizabeth Kinnison, a medical examiner who performed the autopsy on Pressey's body, determined that the cause of Pressey's death was a single gunshot wound to Pressey's left upper chest. Dr. Kinnison determined that the bullet traveled from left to right, injuring the upper lobe of Pressey's left lung, his aortic arch, and the upper lobe of his right lung, and lodging in Pressey's right chest wall. Dr. Kinnison did not observe any soot or stippling (i.e., pinpoint breaks in Pressey's skin caused by gunpowder) around Pressey's gunshot wound, indicating that Pressey was not shot from close range and that he was shot from more than three to four feet away.

Jim Bullock, a firearms expert who analyzed the bullet retrieved from Pressey's body, determined that the bullet was a .22 caliber long rifle coated lead bullet. Bullock opined that multiple types of guns could have fired the bullet, including a handgun, a revolver, or a rifle, but the bullet was too damaged for Bullock to determine the exact type of gun that fired it.

On September 2, 2020, police officers executed a search warrant at Motel Zuma. In Slye and Darlene's room, officers found an empty gun holster on the top shelf of the bathroom cabinet across from the sink. The holster was a generic universal holster that could store any small handgun. Officers also found an "older model rifle in a black case" and ammunition at the residence. From David's vehicle, officers recovered a Taurus 9 mm luger. Neither the rifle nor the Taurus luger could have fired the .22 caliber bullet recovered from Pressey's body. The police ultimately never found the murder weapon.

Investigator Timothy Renwick reviewed surveillance footage taken on the night of August 28, 2020, from various businesses in the area near Motel Zuma. The footage depicts Slye walking from Motel Zuma across Richmond Road to the Pavilion Shops at 10:12 p.m., Slye and Pressey's confrontation at 10:15 p.m., and the parties separating at 10:19 p.m. After the parties separated, Pressey traveled back to the Super Inn and climbed the stairs leading to his

room. At 10:31 p.m., Pressey appeared on the second-floor landing of the Super Inn. At 10:45 p.m., Pressey descended the landing stairs and walked towards the Super Inn lobby. Pressey then left the Super Inn parking lot and crossed Richmond Road heading towards Motel Zuma.

Meanwhile, upon separating from Pressey at 10:19 p.m., Slye crossed to the center of Richmond Road and positioned himself next to a tree in the median. There, Slye stood for several minutes and appeared to be watching the Super Inn. At 10:43 p.m., Slye started walking eastbound towards the Super Inn. At 10:47 p.m., surveillance footage from the Cox building next to Motel Zuma shows Slye walking at a much quicker pace in front of the Cox building and then cutting between the Cox building and Motel Zuma. The surveillance footage shows Slye carrying a handgun while walking between the Cox building and Motel Zuma, heading in the direction of Motel Zuma's dumpsters. Darlene identified Slye as the man depicted in a still image from the Cox surveillance footage. Investigator Renwick also observed that the man in the footage had a tattoo on his left forearm, consistent with Slye's tattoo on his left forearm.

In recorded jail calls with his brother, Mark Slye (Mark), Slye initially denied interacting with Pressey after 9:00 p.m. on August 28, 2020, handling a firearm that night, and hearing gunfire that night. During other jail calls, however, Slye admitted that he had interacted with Pressey after 9:00 p.m. on August 28, 2020, that he walked between the Cox building and Motel Zuma with a firearm at 10:47 p.m., and that he heard gunfire that night. Slye stated that he had walked in between the Cox and Motel Zuma buildings with a gun in his hand while patrolling the area around 300 to 400 hundred times in the past and that he was trying to do a good thing to "keep riff raff and shit off the property." Slye also expressed his frustration that the James City County police had not done more to prevent Pressey from trespassing.

- 6 -

During certain jail calls, Slye stated that, after his confrontation with Pressey near the Pavilion Shops on the night of August 28, 2020, he stood in the Richmond Road median to watch someone in white shorts and a black coat at the Super Inn—not Pressey. Slye explained that, after standing in the Richmond Road median, he walked to a McDonald's bus stop, crossed the street, and stood near a Hardee's restaurant to watch the man in the white shorts and other people causing a commotion in the Super Inn parking lot. Slye stated that he then walked back to the McDonald's bus stop and cut between the Cox and Motel Zuma buildings as he made his way back to the Motel Zuma property. Slye claimed that, when he arrived back on the Motel Zuma property, he saw his friend Eric Jurgensen (Eric),[3] and Eric told Slye that he had seen Pressey walking away from the Motel Zuma property towards a church. At trial, Investigator Renwick testified that he never observed an individual wearing white shorts and a black coat in the surveillance footage of the Super Inn that he reviewed.

During other jail calls, Slye told Mark that he did not want David or Darlene to talk to the police and that David ought to retain an attorney. Slye instructed Mark to "tell Darlene and David not to open their fucking mouth." Slye also instructed Mark to "take [David] for a little ride" and remember to "keep [their] phones out of the vehicles."

David testified that he only saw Pressey and Slye walking around the Motel Zuma property on August 28, 2020. David admitted that he sent a message on Facebook Messenger to a female friend, Jennifer, at 10:30 p.m. on August 28, 2020, stating that he wanted to hit Pressey for harassing Darlene. David also admitted sending another Facebook message to Jennifer at around 11:00 p.m. stating that Pressey had reentered the motel property and threatened him. David acknowledged that at no point during his Facebook conversation with Jennifer did he ever mention anything about hearing gunshots that night. David admitted, however, that his cell

---

[3] At trial, witnesses often referred to Eric Jurgensen as "Crash."

phone did not contain any phone text messages dating back to August 28, 2020, because Slye had directed him to delete the text messages on his phone. David also admitted that he had a 9 mm handgun in his vehicle's glove compartment on the night of August 28, 2020, but asserted that he did not touch the firearm that evening.

In his defense, Slye called Eric, Victoria Jurgensen (Victoria), and Stormi Niles (Stormi) as witnesses. All three lived at Motel Zuma in August 2020. They testified that they had spent August 28, 2020, in Smithfield, Virginia, preparing for Eric and Victoria's daughter's wedding the next day and arrived home in separate vehicles between 10:10 p.m. and 10:30 p.m. After arriving home, Victoria walked her dog and then took a shower. Just before midnight, Victoria took her dog outside again and walked it near the grassy area beside the dumpsters at the Motel Zuma parking lot. While walking her dog, Victoria saw nothing suspicious, and her dog never alerted her to anything. Stormi also walked her dogs around midnight on August 28, 2020. Stormi noted that her two dogs would often relieve themselves on a bush near the Motel Zuma dumpsters. Stormi noticed nothing unusual near the dumpsters that night, and her dogs did not alert her to anything.

Eric testified that, upon arriving home, he changed his clothes and went to hang sheetrock in the rear building of Motel Zuma with Slye. Eric asserted that he and Slye hung sheetrock until they broke a water line and that they worked until around 2:30 a.m. to fix the break. Eric testified that he did not hear any gunshots on August 28, 2020, and could not remember if he saw Slye carrying a gun that night. Eric admitted that he owned two revolvers: a .38 and a .32 caliber. Eric noted that he and Slye often carried a firearm while walking around the Motel Zuma property conducting security. Eric explained that they often walked around the property's perimeter to ensure nothing was stolen and no one was trespassing. Eric admitted that his guns were stored in the motel basement and that both he and Slye had access to them. Eric also

admitted that he did not offer his guns to the police to test them against the bullet that killed Pressey and that he lost one of the guns during a vacation in West Virginia.

During the trial, Slye moved to strike the charges at both the conclusion of the Commonwealth's evidence and at the conclusion of all the evidence. The trial court denied both motions. At the conclusion of the trial, the jury convicted Slye of first-degree murder and use of a firearm in the commission of a murder. The trial court sentenced Slye to 33 years of incarceration. Slye appeals.

ANALYSIS

On appeal, Slye argues that the trial court erred in denying his motions to strike the charges of first-degree murder and use of a firearm in the commission of a murder. Slye asserts that the evidence was (1) insufficient to prove that he was the person who shot and killed Pressey and (2) insufficient to prove that he acted with premeditation in killing Pressey.

"A motion to strike challenges whether the evidence is sufficient to submit the case to the jury." *Lawlor v. Commonwealth*, 285 Va. 187, 223 (2013). "Whether the evidence adduced is sufficient to prove each of th[e] elements [of a crime] is a factual finding, which will not be set aside on appeal unless it is plainly wrong." *Id.* at 223-24. "In reviewing that factual finding, we consider the evidence in the light most favorable to the Commonwealth and give it the benefit of all reasonable inferences fairly deducible therefrom." *Id.* at 224. "After so viewing the evidence, the question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Commonwealth v. McNeal*, 282 Va. 16, 20 (2011)). "[I]f there is evidence to support the conviction, the reviewing court is not permitted to substitute its judgment, even if its view of the evidence might differ from the conclusions reached by the finder of fact at the trial." *Id.* (quoting *McNeal*, 282 Va. at 20).

## I. Identity

Slye argues that the Commonwealth's evidence failed to prove that he shot and killed Pressey. Slye asserts that the evidence did not establish that he and Pressey were on the Motel Zuma property at the same time when the shooting occurred. Slye notes that there were no eyewitnesses or video footage of the shooting and that multiple people walked or drove past the dumpsters after the shooting occurred, yet no one saw anything unusual. Slye also argues that David cannot be excluded as a murder suspect.

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). But in reviewing the sufficiency of the evidence establishing the defendant as the perpetrator, "[o]ur inquiry does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). Also, "[w]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." *Muhammad v. Commonwealth*, 269 Va. 451, 479 (2005).

Where the Commonwealth relies "on circumstantial evidence to carry its burden of proof beyond a reasonable doubt, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence.'" *Moseley*, 293 Va. at 463 (quoting *Commonwealth v. Smith*, 259 Va. 780, 783 (2000)). But "[m]erely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [factfinder] to decide." *Edwards v. Commonwealth*, 68 Va. App. 284, 301 (2017) (alterations in

- 10 -

original) (quoting *Haskins v. Commonwealth*, 44 Va. App. 1, 9 (2004)). "By finding [a] defendant guilty, therefore, the factfinder 'has found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" *Id.* (alteration in original) (quoting *Haskins*, 44 Va. App. at 9). "While a factfinder may not arbitrarily disregard a reasonable doubt, whether 'the hypothesis of innocence is reasonable is itself a "question of fact," subject to deferential appellate review.'" *Burton v. Commonwealth*, 58 Va. App. 274, 285-86 (2011) (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 572 (2009) (en banc)).

Additionally, "[t]he sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). "The conclusions of the fact finder on issues of witness credibility may be disturbed on appeal only when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299 (1984)). "In all other cases, we must defer to the conclusions of 'the fact finder[,] who has the opportunity of seeing and hearing the witnesses.'" *Id.* (alteration in original) (quoting *Schneider v. Commonwealth*, 230 Va. 379, 382 (1985)). "This deferential principle applies not only to 'matters of witness credibility' but also to the factfinder's 'interpretation of all of the evidence, including video evidence' presented at trial." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022)). "The factfinder 'views video and other evidence to determine what it believes happened; we, on appellate review, view video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the [factfinder] did.'" *Id.* (alteration in original) (quoting *Meade*, 74 Va. App. at 806).

Here, the evidence was sufficient for a reasonable factfinder to conclude that Slye was the person who shot and killed Pressey. The evidence established that, on August 28, 2020, Slye and Pressey engaged in a confrontation at 10:15 p.m. across the road from Motel Zuma near the Pavilion Shops in Williamsburg. After Slye and Pressey parted ways at 10:19 p.m., Pressey walked towards his room at the Super Inn, and Slye walked to the center of Richmond Road and stood in the median while watching the Super Inn for several minutes. Slye then crossed Richmond Road and continued to watch the Super Inn from around the nearby Hardee's restaurant. Video footage, shown to the jury, corroborates the movement of the parties.

Sometime after Slye and Pressey's confrontation, David saw Pressey reenter the Motel Zuma property near the entrance of the property and walk along the parking lot towards the rear Motel Zuma building near the dumpsters. Surveillance footage confirmed that Pressey left the Super Inn and walked towards the Motel Zuma property at 10:45 p.m. Shortly thereafter, surveillance footage shows Slye walk at a quick pace in front of the Cox building next to Motel Zuma, turn, and travel in between the Cox building and Motel Zuma's front building towards the Motel Zuma dumpsters at 10:47 p.m., while carrying a handgun. In a jail call, Slye identified himself as the person walking between the Cox building and Motel Zuma at 10:47 p.m. and admitted that he had a handgun. Slye also claimed that he regularly patrolled the motel's property with a handgun.

Minutes after watching Pressey walk towards the rear Motel Zuma building near the dumpsters, David heard two pops that sounded like gunshots. After freezing for five minutes, David then observed Slye emerge from the same area where David had lost sight of Pressey, and Slye told David to go home. The next morning, Pressey's dead body was found in the tall grass near Motel Zuma's dumpsters, and expert testimony established that Pressey was killed by a single .22 caliber bullet shot in his left upper chest that could have been fired from a handgun.

Police officers later recovered a generic gun holster from Slye's bathroom shelf that could have been used to store a handgun, and Slye had accessed the bathroom shelf on the night of the shooting while David and Darlene were eating dinner.

Finally, on the morning that Pressey's body was found, Slye falsely told the police that the last time he saw Pressey was between 8:30 p.m. to 9:00 p.m. on August 28, 2020, whereas the evidence established that Slye had interacted with and viewed Pressey after 10:00 p.m. that night. "A false or evasive account is a circumstance, similar to flight from a crime scene, that a fact-finder may properly consider as evidence of guilty knowledge." *Covil v. Commonwealth*, 268 Va. 692, 696 (2004). Slye also repeatedly tried to discourage David and Darlene from talking to the police about the incident, and also told David to delete his phone text messages from the night of the incident, to which David complied.

In summary, considering the totality of the circumstantial evidence in this case, a reasonable factfinder could have concluded that Slye was the person who shot and killed Pressey on the night of August 28, 2020. Therefore, the trial court did not err in denying Slye's motions to strike.

## II. Premeditation

Slye argues that the evidence failed to prove that he killed Pressey with premeditation and thus was insufficient to support a jury verdict for first-degree murder. Slye asserts that the Commonwealth's theories on how Slye acted with premeditation were "not based on facts and amount only to conjecture and speculation."

Code § 18.2-32 states that "[m]urder . . . by any willful, deliberate, and premeditated killing . . . is murder of the first degree." "To premeditate means to adopt a specific intent to kill, and that is what distinguishes first and second degree murder. The intent to kill must come into existence at some time before the killing; it need not exist for any particular length of time." *Avent v.*

*Commonwealth*, 279 Va. 175, 208 (2010) (quoting *Remington v. Commonwealth*, 262 Va. 333, 352 (2001)). "When proof of premeditation is the subject of a sufficiency challenge, evidence showing that the premeditation was only slight or momentary is sufficient to sustain the conviction. This is so because 'premeditation is an intent to kill that needs to exist only for a moment.'" *Jackson v. Commonwealth*, 267 Va. 178, 204 (2004) (quoting *Green v. Commonwealth*, 266 Va. 81, 104 (2003)).

"Premeditation and formation of an intent to kill seldom can be proved by direct evidence. A combination of circumstantial factors may be sufficient." *Rhodes v. Commonwealth*, 238 Va. 480, 486 (1989). "Indeed, '[i]ntent may be, and most often is, proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts.'" *Secret v. Commonwealth*, 296 Va. 204, 229 (2018) (alteration in original) (quoting *Viney v. Commonwealth*, 269 Va. 296, 301 (2005)). Further, "[i]t is permissible for the fact finder to infer that every person intends the natural, probable consequences of his or her actions." *Id.* (alteration in original) (quoting *Perkins*, 295 Va. at 330). "Premeditation is a factual question, reserved for determination by the fact finder." *Martinez v. Commonwealth*, 42 Va. App. 9, 22 (2003). "It rests within the province of the trier of fact to determine whether a defendant acted willfully, deliberately and with premeditation in killing his victim." *Morris v. Commonwealth*, 17 Va. App. 575, 578 (1994). "We review this finding by viewing the evidence in the light most favorable to the Commonwealth." *Id.*

Here, the evidence established that, before the shooting on August 28, 2020, Pressey had twice trespassed onto the Motel Zuma property that day, causing a disturbance and acting threateningly towards Slye's girlfriend, Darlene. Pressey was also heavily intoxicated that day. The police escorted Pressey back to his room at the Super Inn after Pressey's second trespass, but otherwise took no actions to permanently prevent Pressey from trespassing again. Later that night after Pressey's two trespasses, Slye acquired a handgun from his room and confronted

- 14 -

Pressey at the Pavilion Shops across the road from Motel Zuma. After that confrontation, Slye did not return to the Motel Zuma property, but instead watched the Super Inn that Pressey was staying at from the Richmond Road median. When Pressey returned to the Motel Zuma property for a third time after his confrontation with Slye, Pressey encountered David and asked, "what, are you going to kick my ass, are you going to kill me[?]"

Upon seeing that Pressey was trespassing onto the Motel Zuma property again, Slye hurried back to Motel Zuma at a quick pace and drew his handgun while traveling between the Cox building and Motel Zuma towards the Motel Zuma dumpsters where Pressey was headed. When Pressey's dead body was found the next morning at the dumpsters, he was grasping a cigarette in one hand and a lighter in the other, and his body was found face down in tall grass. Testimony from the medical examiner, Dr. Kinnison, later established that Pressey died from a gunshot to his left upper chest that pierced both of Pressey's lungs and his aortic arch. Dr. Kinnison also testified that she did not observe soot or stippling near Pressey's gunshot wound, indicating that Pressey was not shot from close range.

Viewing the evidence in the light most favorable to the Commonwealth, a reasonable factfinder could have concluded that Slye acted with premeditation in shooting and killing Pressey to essentially carry out an act of vigilantism against Pressey. In reaching this conclusion, the jury could have reasonably considered (1) Slye's knowledge of Pressey's repeated trespasses onto the Motel Zuma property and his threatening behavior towards Darlene; (2) Slye's apparent act of acquiring a handgun from the bathroom shelf of his room after Pressey's trespasses; (3) Slye's direct confrontation with Pressey at the Pavilion Shops; (4) Slye's behavior suggesting that he was staking out Pressey's location at the Super Inn and was lying in wait for Pressey; (5) Pressey asking David, "are you going to kill me[?]," suggesting that someone had said something to that effect to Pressey during their confrontation at the Pavilion

Shops; (6) Slye drawing his handgun and heading towards Pressey's location near Motel Zuma's dumpsters at a quick pace after Pressey's third trespass; (7) the fatal shot to Pressey occurring from a distance and hitting Pressey's lungs, a location likely to cause death; and (8) the fact that Pressey's body was found face down with a lighter and cigarette in his hands, suggesting that Pressey was not engaging in any violent behavior towards Slye at the time of the shooting and thus Slye was not acting in self-defense when he shot and killed Pressey.

In summary, considering the totality of the circumstantial evidence in this case, a reasonable factfinder could have concluded that Slye acted with premeditation in shooting and killing Pressey. Therefore, the trial court did not err in denying Slye's motions to strike.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*